## CHAS. PONES v. THE STATE.

### No. 2201. Decided June 12, 1901.

**1.—Insanity of Witness.**

The statute, article 768, Code of Criminal Procedure, which declares as incompetent to testify as a witness one who is insane when the events happened of which he is called to testify, does not apply to one who has been drugged and stupefied to the extent that he did not at the time realize that he was being victimized, and only afterwards became fully conscious of the villainy which had been practiced upon him, of which he gave a detailed and very clear account in his testimony.

**2.—Theft of Money—Charge as to False Pretenses.**

On a trial for theft of money, the court was not required to charge upon the law of theft by false pretext where it did not appear that prosecutor parted with the possession of the money by means of the false representations of defendants. Such is not the case where the defendant's false pretenses only afforded him an opportunity to get the money, which he did, without the prosecutor's consent.

**3.—Evidence—Identification of Stolen Money.**

On a trial for theft of money, it is competent to prove the identification of a part of the money found on and taken from the possession of defendant.

**4.—Same—Charge.**

On a trial for theft of money, it is not necessary that the court should specifically instruct the jury as to what it took to constitute the identification of money.

**5.—Same—Variance.**

On a trial for theft of money, there is no variance where the evidence did not show that all the money alleged to have been stolen was stolen, or that it was all of the character charged in the indictment.

Appeal from the District Court of Bexar. Tried below before Hon. John A. Clark.

Appeal from a conviction of theft of money; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Edward Dwyer,* for appellant.—The court erred in refusing to instruct the jury, on motion of defendant, not to consider any of the evidence as detailed by the prosecuting witness Angelo Zuchelli to the jury, as to what occurred from 3 o'clock p. m. until 8:30 o'clock p. m. of Monday, March 11, 1901, between him and defendant and another man whom he has not seen since, wherein witness connects defendant with the taking of the money alleged to have been stolen; for the reason that said prosecuting witness admitted, on cross-examination, that on Monday, March 11, 1901, from 3 o'clock p. m. until 8:30 o'clock p. m., he was completely out of his mind; that he had been drugged at 3 o'clock p. m. on said date, and from that time until 8:30 o'clock p. m. he had completely lost his mind, and knew not what he was doing, and was as helpless as a two-year-old child. That he regained his mind and consciousness about 8:30 o'clock p. m. on said date, after eating half a

meal, and then remembered, as if awakened from a dream, all that had transpired.

Under the laws of the State of Texas, persons are incompetent to testify who were in an insane condition of mind when the events happened of which they are called to testify. White's Code Crim. Proc., art. 768; Lopez v. State, 30 Texas Crim. App., 492.

The court failed to instruct the jury upon the law of theft by false pretext, or with intent on the part of the taker to appropriate the thing taken at the very time of the taking, and that there was an actual appropriation.

If we admit as competent the evidence detailed by the witness, Angelo Zuchelli, his money was obtained from him by defendant and another man whom he has not seen since, by a pretext, and that pretext was false. The pretext was that the other man had a lot of money that he wanted to put in the same trunk or place Zuchelli had his. He exhibited a lot of twenty-dollar bills to Zuchelli, and defendant told him he was foolish to carry his money around so carelessly, as he might be robbed, and asked him why he did not place it in a bank; to which the other man replied that his father told him not to put his money in a bank, as it might fail and he would then lose his money. Defendant then said to Zuchelli that this man wanted to put his money where he, Zuchelli, had his. Zuchelli took them to where his money was buried, put them in possession of it, saw the other man put in a package which he folded in his handkerchief, kissed it good-bye, and placed it in Zuchelli's trunk, representing that it was $25,000, and defendant then put a belt in the trunk which looked as if it was puffed out with money, and when he dropped it in the trunk, told Zuchelli it contained $500 with which to buy Zuchelli's store the next day; all of these schemes being a pretext to get Zuchelli's money. At 8:30 o'clock that evening, when he, Zuchelli, came to his senses, and went and broke open the trunk with a hatchet, he found that the package which the fellow claimed contained $25,000, on being opened, consisted of a big bundle of newspapers that had been wrapped up and a one-rollar bill placed at the end; he also found that the belt contained nothing but paper. Hence the pretext that the defendant and the other man had used to get possession of his money was false. The evidence of the prosecuting witness tends to show that the taking was lawful. He took them to where his money was, he put them in possession of it, he gave them the key to his trunk, he gave them $140 in silver; he thought he was receiving $25,000 of theirs in his keeping, and he could safely let them have whatever of his money they wanted, as it only consisted of $650.

Under such circumstances, the court should have. charged the jury upon the law applicable to theft by false pretext, and told them that to warrant a conviction the State must establish, first, a pretext; secondly, that said pretext was false, and that there was an actual appropriation of the thing taken, and that all these prerequisites were proved by the State beyond a reasonable doubt; and the court having failed to so

charge, committed fundamental error, and defendant, through counsel, excepted to the charge at the time it was given for omitting to charge upon this phase of the case. White's Penal Code, art. 861; Id., sec. 1490; Dorr v. State., 12 Texas Crim. App., 345; Johnson v. State, 1 Texas Crim. App., 121; Bearets v. State, 4 Texas Crim. App., 175; Hudson v. State, 10 Texas Crim. App., 229; Attberry v. State, 19 Texas Crim. App., 405.

There was $55 in currency found on defendant when arrested. The prosecuting witness, Angelo Zuchelli, only purported to identify $15 of this, one ten-dollar bill that had a little rust on the upper edge, and a five-dollar bill that had a little more rust on and about the figure five on the right hand end.

The court's charge failed to instruct the jury upon this question of identification of the money stolen, and failed to tell them the proper criterion to follow, and that the evidence must establish beyond a reasonable doubt that the identical money was stolen, or at least more than $50 of same, by defendant. The indictment charged the theft of $650 United States currency, and prosecution only relied on identification of $15, and that by rust marks alone, a most unsatisfactory and unreliable circumstance. The jury, therefore, should have been instructed on this question of identity, and told that whilst the evidence introduced by the State with reference to the rust marks on the ten and five-dollar bills claimed to have been part of the money stolen and found on defendant, that whilst this evidence might be taken as a circumstance, it would not of itself amount to proof of identity of said money. And the defendant, through counsel, duly excepted to the court's charge, for its omitting this issue therefrom, made and demanded by the evidence. Johnson v. State, 36 Texas Crim. Rep., 394; Burrill on Circumstantial Ev., pp. 657, 658; Cline v. State, 43 Texas, 494; Lehman v. State, 18 Texas Crim. App., 174; Williamson v. State, 30 Texas Crim. App., 331.

There is a variance between the money alleged to have been stolen in the indictment, and the money proved to have been lost by the evidence.

The indictment alleges $650 lawful paper currency of the United States of America was stolen, while the evidence shows that only $540 in United States paper currency was lost or missing, as the prosecuting witness, Angelo Zuchelli, testified that was all the money he had in paper currency of the United States of America, and that the balance of the money taken was silver coin of the United States of America, consisting of over $100; and that this silver money was taken with his consent and divided between defendant and the other man. And hence, on account of this variance between the allegata and the probata, a conviction will not stand.

And further, the evidence positively showing, by the admission of the prosecuting witness himself, Angelo Zuchelli, that a part of the money stolen was lawfully in the possession of the defendant and the other

man, then under this view the State should only convict for theft by false pretext. And therefore, as heretofore stated in this motion, the court should have instructed the jury on the law applicable to theft by false pretext, and it was an issue and made so by the State's evidence; and the court, having failed to so charge, committed fundamental error, and this conviction can not stand.

*Rob't A. John,* Assistant Attorney-General, for the State. [No briefs for the State found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of theft of property over the value of $50, and given seven years in the penitentiary; hence this appeal.

Appellant made a motion to strike out the testimony of the State's witness Angelo Zuchelli (prosecutor) on the ground that he had been drugged, and was oblivious of all that occurred between 3 o'clock p. m. on the day of the alleged theft until 8:30 o'clock p. m.; that on account of drugs administered to him in beer during said time he had completely lost his mind, and was helpless as a two-year-old child, and that he only regained his mind and consciousness about 8:30 o'clock p. m. of said day, after eating half a meal, and then remembered, as if awakened from a dream, all that had transpired. Appellant claims that the testimony of said witness should have been excluded by the court under article 768, Code of Criminal Procedure, and he also refers us to Lopez v. State, 30 Texas Criminal Appeals, 492. Said article of our statute provides "that insane persons, who are in an insane condition of mind at the time when they are offered as witnesses or who are in that condition when the events happened of which they are called to testify, are incompetent witnesses." The case of Lopez v. State, supra, discusses and construes said article, and simply holds that the statute means what it says; that if a witness appears to be insane, either at the time when the events occurred which are proposed to be testified about, or at the time when such witness is called to testify, the statute applies, and the evidence can not be heard. In that particular case the testimony showed that the witness had been insane for several years prior to the occurrence about which she was called to testify, and that she was so reputed throughout the community in which she lived, and her testimony at the trial abundantly showed that she was then insane. This was supplemented by the proof of medical experts. So there was no difficulty in applying the statute to that case. Here there was no question made as to the sanity of the witness, except on the particular occasion when the theft is said to have occurred, and then it is claimed he was stupefied and rendered unconscious by the drugs shown to have been administered to him. The witness was made to state that he had no recollection of how the events about which he testified happened at the time, but they came to his mind afterwards, and while he was eating his supper; albeit the witness gave a detailed and very clear account of

how defendant, in connection with another party unknown to witness, worked him on the occasion of the alleged theft. True, he narrates a very strange series of events, descriptive of the methods pursued in getting hold of his money; but it is not unreasonable, and is in keeping with many of the rather novel expedients, as shown by the police reports of modern adventurers, adopted to circumvent the unsuspecting and to secure his goods or money. As narrated by this witness, appellant and another person, whom he says he had never seen prior to the day of the alleged theft, played a successful confidence game on him. They led him to believe they would buy his store, or rather his son's store. They claimed to be Italians, fellow countrymen of the prosecutor; and it was claimed for the stranger that he was rich, had plenty of money, and he produced a package claiming to be $25,000. The parties in the meantime were drinking beer. Prosecutor says this beer was evidently drugged, as after drinking half a glass he saw "stars and stripes and flowers;" got rather sick, and went to the door. It seems he was not able to "shake" these parties, but they followed him, and induced him to believe they were going to buy the store. They went home with him, and there persuaded him to let them deposit the package of money with his money. He went in the back yard, and dug up his money, where he had it buried,—some $540 in currency, and $150 in silver. They suggested that the money should be put in some other place, and prosecutor then produced a trunk, and placed his money in the trunk, as he states, and the strange Italian gave him his package of $25,000, nicely done up in a paper and sealed. Defendant also deposited his belt, which he claimed had money in it, in the trunk. The trunk was locked. The stranger suggested that he would keep the key, inasmuch·as appellant had the trunk in possession, and then neither could get in the trunk without the presence of the other. This was acceded to. They then proceeded to the residence of prosecutor, which was near by, in the same inclosure, where prosecutor's daughter was; and there the prosecutor was induced to turn over the silver money to appellant and the stranger, who divided the money. They then went out into the city, and went to various places. The parties at length, about nightfall, left prosecutor, who returned to his home. There, while eating his supper, it came to him, as he states, that he had been robbed. He then went to his trunk, broke it open, and discovered that the package purporting to be money only contained some worthless paper and a one-dollar bill at the end, and that the belt contained nothing but paper. Now, it does not occur to us, from the statement of this witness, that he was insane at the time of these occurrences, as contemplated by our statute with reference to insane witnesses. No doubt he was under the influence of the drug, which enabled appellant and his pal the more successfully to play a confidence game on him; or he may have been laboring under a degree of mental aberration at the time sufficient to induce him to trust the representations of said parties, and to be controlled by them in the disposition of his money. Whether or not he was hypnotized, and so ren-

dered subject to their influence, or whether or not there is anything in hypnotism, is not necessary to be determined. But evidently on account of their promises and suggestions, and the drug administered with the beer, he was under their influence and control, and confided in their promises and statements, and was induced to produce his money in their presence and to afford them the opportunity to steal it. He subsequently identified appellant (whom he had met several times before) and also identified some of his money which was found on his person when arrested; and there are other circumstances which tend to support his evidence. We do not think, under the facts of this case, it can be said that prosecutor was insane at the time the facts which he narrates transpired; although on cross-examination he states he had no mind when they happened, yet we understand, from the drift of his testimony, that on account of his condition and the representation of appellant and his pal, he was induced to trust in them, and that their villainy did not dawn on him until afterwards. We believe the witness was competent, and his credibility was properly a matter for the jury.

Appellant insists that the court should have given the jury an instruction on the obtention of the money by a false pretext; his contention being that, if the theft was committed, it was committed by means of a false pretext. We think there is a distinction between the obtention of the property itself, and the obtention of an opportunity to steal the property. Evidently, if by means of the false representations, prosecutor had parted with the possession of the money, it might have been theft by a false pretext. But we do not understand from the record in this case that appellant parted with either the possession of the money, that is, the currency, or with the title thereto; but, by means of the false pretenses of appellant and his pal that they were going to buy his store, and that they were depositing the money with him for that purpose, the opportunity was presented to them, and either before or after he placed his money in the trunk along with their packages, they were afforded the opportunity, and took possession of his money without his consent and appropriated it to their own use and benefit. The cases referred to by counsel for appellant of Hudson v. State, 10 Texas Criminal Appeals, 229; Dow v. State, 12 Texas Criminal Appeals, 345; and Atterberry v. State, 19 Texas Criminal Appeals, 405, do not apply. We do not think it was necessary for the State to have identified all the money found on appellant, but if he found a part thereof, which was identified, it was a circumstance to be taken by the jury against him. Nor was it necessary for the court to specifically instruct the jury as to what it took to constitute the identification of money. Nor was it necessary for the court to instruct the jury on recent possession. The court gave a charge on circumstantial evidence which was sufficient.

There was no variance between the allegations in the indictment and the proof of the stolen money. True, the evidence did not show that all of the money alleged to have been stolen was stolen, or that it was all of the character charged in the indictment. The indictment alleged

the theft of $650 in currency money of the United States of America, of the denomination of one, two, five, ten, and twenty-dollar bills, a better description of which was unknown to the grand jury. Five hundred and forty dollars of this was shown to have been in currency money. As to the $150, appellant could not be convicted of this; first, because it was coin; and second, because the record shows that prosecutor gave this money to them. Eliminating this, there was no question that the theft of the balance of the currency money constituted a felony.

We have examined the record carefully, and in our opinion the evidence supports the verdict of the jury. The credibility of the witnesses was a matter within the province of the jury. There being no error in the record, the judgment is affirmed.

*Affirmed.*