### WILEY BASS v. THE STATE.

#### No. 476.    Decided March 23, 1910.

Rehearing denied May 4, 1910.

**1.—Murder—Jury and Jury Law—Challenge for Cause—Race Discrimination.**

Where, upon appeal from a conviction of murder, it did not appear from the record that at the time appellant had exhausted his peremptory challenges, any objectionable juror was forced upon him, there was no error; besides where the jurors simply stated that their prejudice was limited to the negro race socially, but not civilly or legally, there was no error.

**2.—Same—Evidence—Conspiracy.**

Where, upon trial for murder, the theory of the State was that the defendant acted in a conspiracy with others to rob and kill the companion of deceased, and it was shown that shortly before the homicide the defendant had been in the tent where the deceased was killed and had just left the same a minute before the State's witness had left it, there was no error in admitting the testimony of said State's witness, that when the witness left the tent she heard murmuring which she believed was someone talking in the direction of where the defendant had gone; it being shown that immediately thereafter defendant's codefendants appeared in the door of the tent and did the killing.

**3.—Same—Charge of Court—Circumstantial Evidence—Juxtaposition.**

Where, upon trial of murder, the killing was shown by positive testimony as also the conspiracy, and defendant's presence near the scene at the time of the killing was also shown by positive testimony, and besides the defendant was in such juxtaposition to the immediate act of the killing as to take the case out of the rule of circumstantial evidence, there was no error in the court's failure to charge thereon. Following Cabrera v. State. 56 Texas Crim. Rep., 141.

**4.—Same—Charge of Court—Conspiracy—Party not Indicted.**

Upon trial of murder, where one of the accused had turned State's evidence and was not indicted, there was no error in the court's charge upon conspiracy of defendant and others to include the said unindicted party in said charge; even though the testimony of said accomplice did not go to the entire extent that the parties had agreed to kill the deceased.

**5.—Same—Charge of Court—Murder in the Second Degree.**

Where, upon trial of murder, the defendant was convicted of murder in the second degree, he could not complain of a charge of the court on murder in the first degree.

**6.—Same—Charge of Court—Accomplice—Requested Instructions—Principals.**

Where, upon trial of murder, the evidence showed that the defendant with others conspired together to commit robbery with firearms, and that defendant was sent to the tent of the person who was intended to be robbed to ascertain whether he was armed, while his co-conspirators were some distance away from the tent, and report to them; and the evidence also showed that the defendant carried out this plan, but was not immediately present when the killing took place by his co-conspirators, the court correctly charged on the law of principals, and did not err in refusing a charge that the defendant if guilty was an accomplice and not a principal, the court in the meantime instructing the jury to acquit the defendant if he did not enter the conspiracy. Following Dawson v. State, 38 Texas Crim. Rep., 50; 41 S. W. Rep., 599.

Appeal from the District Court of Jones. Tried below before the Hon. Cullen C. Higgins.

Appeal from a conviction of murder in the second degree; penalty, seventy-five years imprisonment in the penitentiary.

The opinion states the case.

*Davenport & Davenport,* for appellant.—On the question of admitting evidence that the State's witness heard murmuring: Morton v. State, 43 Texas Crim. Rep., 533, 67 S. W. Rep., 115; Godwin v. State, 38 Texas Crim. Rep., 466; Strange v. State, 38 Texas Crim. Rep., 280, 42 S. W. Rep., 551; Holley v. State, 46 S. W. Rep., 39.

On the question of the court's failure to define an accomplice and refusing defendant's special charge thereon: Renner v. State, 43 Texas Crim. Rep., 347, 65 S. W. Rep., 1102; Stevenson v. State, 17 Texas Crim. App., 618; Lee v. State, 55 Texas Crim. Rep., 379, 116 S. W. Rep., 1153; Gant v. State, 55 Texas Crim. Rep., 284, 116 S. W. Rep., 801.

On the question of the court's failure to submit a charge on circumstantial evidence: Trijo v. State, 45 Texas Crim. Rep., 127, 74 S. W. Rep., 546; Davis v. State, 54 S. W. Rep., 583; Gentry v. State, 56 S. W. Rep., 68; Burrell v. State, 18 Texas, 713.

On the question of the court's failure to charge on manslaughter: Keith v. State, 50 Texas Crim. Rep., 63, 94 S. W. Rep., 1044; Lee v. State, 54 Texas Crim. Rep., 382, 113 S. W. Rep., 301.

On question of the court's charge on principals and conspiracy: Bibby v. State, 65 S. W. Rep., 193; Long v. State, 1 Texas Crim. App., 709; Foster v. State, 8 Texas Crim. App., 248; Tooney v. State, 5 Texas Crim. App., 163; Ross v. State, 10 Texas Crim. App., 455.

On the question of the court's including in his charge on conspiracy of one who was not indicted but had turned State's evidence: Bishop v. State, 43 Texas, 390; Johnson v. State, 1 Texas Crim. App., 609.

On the question of the court's charge on the rights of parties in retaking stolen property: Wheeler v. State, 56 Texas Crim. Rep., 547, 121 S. W. Rep., 166.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—On the 7th day of July, 1909, an indictment was returned into the District Court of Jones County charging Anthony Bradford, Bill Milo and Wiley Bass with the murder of one Antonio Charvis by shooting him with a gun, said murder being alleged to have been committed on the 21st day of February preceding. Thereafter appellant made application for a severance, and same being granted, he was put to trial alone, and was on the 22d day of July of the same year by the jury found guilty of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a period of seventy-five years.

There are a number of questions raised on the appeal, all of which are well briefed, and most of which will be considered in this opinion. In general, it may be stated the case was well tried, and, as we have concluded after a careful examination of the record, there is no error for which the judgment should be reversed. The facts show that at the time of the killing a number of Mexicans were living near the village of Lueders in Jones County, occupying tents; that among these Mexicans were H. H. Garcia and his wife, Marcella Garcia, and that deceased, with other Mexicans, was in the tent at the time of the killing. All three of the indicted parties, as well as Joe Sexton, who will be hereafter referred to, were negroes. The evidence shows that about the day of the killing Anthony Bradford and Milo had bought from Robert Greek, who lived in the neighborhood, a gun and a pistol. The record indicates that at some time these Mexicans, and some or all of the negroes had been gambling. It was the contention of appellant as well as Milo and Bradford that the Mexican Garcia in playing cards with Bradford and Milo had taken from them money staked on the game which he had not won, and was unlawfully and unjustly detaining their money from them. This was denied by Garcia and his wife. It was the theory of the State that having ascertained that Garcia had some money, that the parties had deliberately conspired to rob them, and that in this conspiracy Milo and Bradford were the moving spirits. It was also the contention of the State that if in fact Garcia had detained any money to which he was not entitled, that the parties had conspired together to retake the money, and in the event of his refusal on peaceable demand to deliver it, to kill him if necessary to obtain possession of same. The record is quite voluminous, and it will be

impossible to set out the testimony in full. It will be sufficient to make a general statement of the matters at issue.

Garcia testified that Joe Sexton and appellant came to his tent on the day of the homicide near the middle of the afternoon and wanted him to play cards with them, which he declined to do. That later on in the afternoon, about sundown, they came again, and said that they wanted to get supper; that his wife fixed supper for them, and after they had had their supper they asked, appellant doing the talking, if they had any change; that he mentioned the matter to his wife, and that she laughed, and said that she had change for as much money as he had, and went over to a little valise and opened it, and showed him her money, and that he said, "Mamma, you have got plenty of money." He says that Bass threw down a half dollar to pay for the supper, and that no change was needed. He also states that his wife had some eighty or ninety dollars. That almost immediately appellant got up and went out; that then his wife went out of the tent to turn loose a mare, and that she had been gone but a few minutes when Milo and Bradford came to the door of the tent; that Bradford had a six-shooter and Milo a shotgun, and that when they came to the door they said, "Give me all the money, you sons-of-bitches." That deceased tried to get out and they shot him; that at the time they came to the door he was lying on the bed. He says shots were fired three times. He got hold of Bradford and they had quite an encounter, Bradford finally getting loose, when he got his gun and pursued him, shooting once or twice. It seems that deceased Charvis was shot in the right arm with a gun, and through the breast with a pistol and died immediately. It was the theory of the State, and to some extent it is directly shown by the testimony of Sexton that the arrangement and agreement was that appellant should go to the tent and ascertain whether the Mexicans were armed, and if he discovered that they were not armed, he was to come out in the open where he could be seen, and then Milo and Bradford were to go in the tent and get the money. Sexton testified that the parties endeavored to induce him to perform this service, which, however, he declined to do. He also testifies that they were to pay appellant for doing this. He does not say, however, there was any agreement between the parties that if Garcia declined to pay over the money that they would kill him, or just what they would do. Appellant, in his testimony, says that there was no conspiracy to kill the Mexicans or any of them; that on the contrary, they all believed that if Garcia was sober that he would on request surrender the money claimed to have been unlawfully detained, and that he was to go in the tent, and if he was sober, come out so they could know this fact. He distinctly denies any conspiracy to kill the Mexicans or harm them, and says over and over that if there was such conspiracy that he did not know it and was not a party to it. In this case neither Bradford nor Milo testified. Sexton, who was in the tent, left before any shot was fired. There is no issue of self-defense raised in the case,

nor were there any facts shown reducing the killing, if unlawful, to the grade of manslaughter.

1.   There is a bill of exceptions in the record touching the action of the court in respect to the competency of the jurors Johnson, McCaleb and Griffin.  Even if it could be held that the court was in error in holding these jurors qualified, such error could not avail appellant for the reason that it does not appear by this bill or elsewhere in the record that at the time appellant had exhausted his peremptory challenges, and that any objectionable juror was forced upon him; on the contrary, it is a fair inference from the bill that these jurors were challenged by appellant.  Besides, we think that the action of the court was not erroneous.  Some of these jurors stated they had a prejudice against the negro race socially, but not civilly or legally.  We understand this to mean merely as companions they are not desirable, and that as associates would not be recognized, but that they had no prejudice against the race that would influence or affect their action in respect to any right or rights under the law.

2.   There are a number of exceptions in the record with reference to the testimony of Marcella Garcia.  She testified, as will be remembered, that she went outside of the tent about the time that appellant left, and after she left the tent she was asked if she heard anything out there, to which she replied that she heard a murmur, but did not know what it was.  She was further pressed to say: "What was it a murmur of?" to which she replied that she believed it was someone talking, but could not swear to it.  Her whole statement is that "After the defendant and Joe Sexton had eaten supper in my tent on the night of the killing, they sat in the tent awhile, then the defendant went out of the tent, and in about one minute I went out to untie a horse that was tied in about twenty feet of the tent.  I saw the defendant going off down a hollow, or draw, about one hundred yards from the tent when I got out of the tent, I heard a murmur out there, didn't know where it was, I believe it was somebody talking, but would not swear to it."  This testimony was objected to for the reason that it threw no light on the transaction; that it is immaterial for the reason that it threw no light on the killing, and does not in any way connect the defendant with the noise witness heard; that it was prejudicial to the rights of appellant, because it is attempted by the prosecution to connect the defendant with this murmuring by evidence that should not have been admitted, would likely prejudice the jury against appellant, and was not relevant or material to any issue in the case. These bills were allowed by the court with the following explanation: "The evidence of Joe Sexton, the accomplice in the case, connects the defendant with the conspiracy and transaction and this evidence was only admitted to show that the defendant came into the Mexican's camp to see how much money they had, and to give signal to his companions, Bill Milo and Anthony Bradford, when the way was clear in the tent to make the attack and immediately after murmuring sounds

of human voices from the ravine in the direction Wiley Bass had gone, Milo and Bradford appeared in the door of the tent, but Bass did not come into the light at the tent door or was not seen there at least by the Mexicans, therefore, after the accomplice testified in the case and was corroborated at other places by the evidence, I could not see that defendant was injured by this evidence." We think this testimony was admissible in view of the other testimony that Milo and Bradford were a short distance outside of the tent; that almost immediately after the sound of these voices were heard, that they appeared in the tent, and their actions and appearance were in harmony with the agreement theretofore testified to, and under the circumstances the jury could well believe from the fact that talking was heard, that appellant was connected therewith. If it did not raise this issue, it could have no injurious effect, and could not be considered a matter of such gravity as could injure appellant since there was nothing said and repeated of a character to injure his case.

3. Again, it is urged that the court erred in not charging the law of circumstantial evidence. The court was not, under the circumstances, required to so charge. The act and the fact of the killing by Milo and Bradford were shown by positive testimony. The agreement and conspiracy were raised also by direct testimony. Appellant's presence at the time was shown by the positive testimony of one witness. Besides, if the conspiracy was believed, and this was necessary to a conviction, appellant, under all the rules laid down by this court, was in such juxtaposition to the immediate act of the killing as to take the case out of the rule of circumstantial evidence. Cabrera v. State, 56 Texas Crim. Rep., 141.

4. The 6th ground of the motion complains of the 15th paragraph of the court's charge, which will be set out in detail hereafter, on many grounds; among others, for the reason that it instructs the jury that if the killing was in pursuance of an agreement or conspiracy entered into between appellant, Milo and Bradford, or these persons, together with Joe Sexton, that they could under certain circumstances convict. The inclusion of Sexton as a party to the conspiracy is complained of because he is not named in the indictment. The fact that he was not indicted would be no reason why, if the evidence raised the issue, as it does, the court should not submit the case with reference to a conspiracy to which he was a party. If, as we assume, he had turned State's evidence, and entered into an agreement with the State that he was not to be prosecuted, the mere failure to indict him would not prejudice the rights of the State to secure a conviction growing out of a conspiracy to which he was a party. It is further objected that the charge is erroneous since it suggests a theory that is not in any manner justified or authorized by the evidence. This contention is based upon the idea that the testimony of Sexton does not go to the entire extent and wholly support the theory and issue submitted in the charge. It is true that Sexton does not testify in terms that the

parties had agreed and conspired to kill the Mexicans if they declined to deliver the money demanded, but we think, in view of the preparation made in the way of arms, and judged by the conduct of the parties at the time, the nature of the conduct between them, and all the circumstances of the case, that the issue was distinctly raised of a conspiracy to rob these Mexicans, and that the court did not err in submitting this as a basis and ground of conviction.

5. Paragraph 25 of the court's charge is complained of on the ground that, as applied to appellant, it is erroneous since in the absence of proof of express malice on the part of appellant there could be no higher grade of offense than murder in the second degree. If this charge could be held erroneous, it still could not avail appellant since he was convicted of murder in the second degree and not of murder in the first degree.

6. The most important question arising in the case is the failure of the court to charge on the issue of accomplice, and to submit the special instructions requested herein by appellant. This special charge is as follows:

"You are charged that if you find from the evidence adduced in the trial of this case, and believe that the defendant, Wiley Bass, was not acting together in the perpetration of the crime charged with Bill Milo and Anthony Bradford, in accordance with a previously formed design and conspiracy, made and entered into with the said Bill Milo and Anthony Bradford, by this defendant, if any, and you further believe and find that the said defendant, Wiley Bass, was an accomplice with the said Bill Milo and Anthony Bradford in the perpetration and commission of the crime, as the term accomplice is defined herein submitted to you herein, then in that event you will acquit the defendant.

"An accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands or encourages another to commit the offense, or who agrees with the offender to aid him in committing the offense, though he may not have given such aid; or who promises any reward, favor or other inducement; or threatens any injury in order to procure the commission of the offense; or who prepare arms or aid of any kind prior to the commission of an offense for the purpose of assisting the principal in the execution of the same."

This question is closely related to the sixth ground of appellant's motion for new trial, referred to, generally, above, and in order to properly present the question, it becomes important to set out at length the paragraphs of the court's charge dealing with this question. Touching the doctrine of principals, and applying the law to the facts of the case, the court, in different paragraphs, which we have grouped, instructs the jury as follows:

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense has been actually com-

mitted by one or more persons the true criterion for determining who
are principals is:  Did the parties act together in the commission of
the offense?  Was the act done in pursuance of a common intent and
in pursuance of a previously formed design in which the minds of all
united and concurred?  If so, then the law is that all are alike guilty,
provided that the offense was actually committed during the existence
and in the execution of the common design and intent of all and all
were actually and bodily present at the time of the commission of the
offense and participated therein; or if all are not actually and bodily
present at the time of the commission of the offense, but that some of
them not being actually and bodily present kept watch so as to prevent
interruption of those engaged in committing the offense and had pre-
viously agreed to the commission of the offense and were acting to-
gether at the time of its perpetration, then such persons so aiding,
encouraging or watching, are principal offenders, provided they knew
of the unlawful intent of the others who actually committed the offense,
if any.

"Also all persons who knowing the unlawful intent of persons who
do actually commit an offense, and who aid by acts or who encourage
by words or gestures those actually engaged in the commission of an
offense at the time of such commission, and were performing one part
of the transaction constituting the unlawful offense while the others
who actually committed the offense, are performing another part in
aid of its accomplishment, and the parties had previously agreed to
the commission of the offense, then all parties are guilty as principal
offenders and are punishable the same as those who actually commit
the offense charged.

"Now, therefore, if you believe from the evidence in this case be-
yond a reasonable doubt that the defendant, Wiley Bass, and Bill Milo
and Anthony Bradford, or they, together with Joe Sexton, had entered
into an agreement with each other to procure arms and to compel H.
H. Garcia to return money to Bill Milo and Anthony Bradford,
claimed to have been taken away from Bill Milo and Anthony Brad-
ford by H. H. Garcia, and agreed to act together with each other in
taking the money away from H. H. Garcia and previously formed a
design in which the minds of all three or four united and concurred
in and a common intent to take the money away from Garcia in pur-
suance of a previously formed design, and that they and each of them
intended at the time that if any resistance was offered upon the part
of said H. H. Garcia to take the life of the said H. H. Garcia, and
that in pursuance of said common intent of all, the said Wiley Bass
acting in conjunction with Bill Milo and Anthony Bradford, or with
them and Joe Sexton, went to the tent of said H. H. Garcia and that
Bill Milo and Anthony Bradford shot and killed Antonio Charves, but
that Wiley Bass was not actually and bodily present at the time, but
was doing some act carrying out his part if any of the common intent

and design of all, if any, or if he was actually and bodily present and doing some act in pursuance of the common design of all, then he is guilty of whatever offense Bill Milo and Anthony Bradford are guilty of, from all the facts and circumstances in evidence as you may determine."

"If you believe from the evidence in this case that Anthony Bradford and Bill Milo had an intention to commit robbery, and did attempt to do so, and in so doing killed Antonio Charves but that the defendant, Wiley Bass, had no knowledge of their unlawful intent, if any, to rob said Garcia and was not acting together with them in the commission of said offense, if any, or if you have a reasonable doubt thereof, you will acquit the defendant; or if you believe that Anthony Bradford and Bill Milo went to the place of the homicide for the purpose of procuring their own money that had been taken from them by H. H. Garcia, if any, with no intent to kill any one, or to rob any one, or if you believe that Bill Milo and Anthony Bradford did intend to take the life of Garcia or any one else, but that the defendant had no knowledge thereof nor that the defendant had no knowledge of their intent to rob, if any they had, or if you have a reasonable doubt in either of the above instances, you will acquit him.

"If you believe from the evidence that Wiley Bass was not acting together with Bill Milo and Anthony Bradford in the attempt to take money unlawfully from H. H. Garcia, if any, or had not previously entered into an agreement with Anthony Bradford and Bill Milo to take money from H. H. Garcia unlawfully, if any, or if you have a reasonable doubt thereof, you will acquit the defendant."

It will thus be seen that the court has given a thoroughly correct charge on the law of principals; that in the fifteenth paragraph the court submitted to the jury distinctly the grounds upon which a conviction could be had; that the court also, in terms, instructs the jury that if appellant had no knowledge of their unlawful intent, and was not acting with them in the commission of the offense, or if they had a reasonable doubt thereof, they would acquit, or if they believed Milo and Bradford went to the place of the homicide for the purpose of procuring their own money with no intent to kill any one or rob any one, or if they did intend to take the life of Garcia, or any one else, but that appellant had no knowledge thereof or had no knowledge of their intent to rob, or if they had a reasonable doubt of these facts, they would acquit; and further that if they believed appellant was not acting with them in the attempt to take money unlawfully from Garcia, or had not previously entered into an agreement so to do, or if they have a reasonable doubt thereof, they would acquit. This submitted distinctly appellant's theory and position quite as clearly as he stated it on the stand, or as any counsel could state it for him. If it be true that he entered into no conspiracy, or made no agreement to kill these Mexicans, to rob them or to forcibly retake money from them, he was neither

a principal nor an accomplice. If he had no knowledge of their wicked purpose, he should have been acquitted. It would have been misleading, under the facts, to have charged on the law of accomplice. Under the evidence it was a case where he had either agreed with the parties, conspired with them, or had not done so. The testimony did raise the issue that Milo and Bradford intended to ask for their money but that there was no agreement that they should kill in order to obtain it. Appellant was given the benefit of a submission on this issue. The testimony does raise the issue that appellant was not present at the immediate time of the killing. His own testimony as well as that of Mrs. Garcia is to the effect that he was some one hundred yards or more from the tent at the time the guns were fired. Ordinarily this fact might raise the issue of an accomplice, but when considered in connection with other evidence it can not do so. There has been much discussion in the books of what is an accomplice, and what is a principal. One of the tests is that the person charged was not present at the time the offense was actually committed, but that is subject to this qualification: If the party charged, though not actually present, is engaged in or is doing something in the chain of causation which leads up to the offense and is a necessary part of its accomplishment, he is a principal, though he may not be at the immediate time actually present. Here under the testimony of the State it was appellant's duty and office to go to the tent, spy out the land, locate the parties, ascertain their unprepared condition, and give signal and notice to his associates. If he did this, though he may have been one hundred or two hundred yards from the scene of the difficulty, he would nevertheless, under the law, be a principal. This we understand to be the clear holding of the court in the case of Dawson v. State, 38 Texas Crim. Rep., 50; 41 S. W., 599. It is undoubtedly the conclusion reached by Judge White in the case of Smith v. State, 21 Texas Crim. App., 107, where it is said that an accomplice is one whose acts are all performed before the commission of an offense, while a principal may not only perform some antecedent act but when the offense is actually committed is doing his part of the work in furtherance of the common purpose. While some of the later opinions have criticised this case on this question, the discussion by Judge White is so lucid, clear and satisfactory as to carry conviction of the correctness of this proposition.

The other matters raised in the motion relate to the charge of the court which, in general, is complained of as being on the weight of evidence, vague and indefinite. We think, considered altogether, the charge is a most admirable presentation of the law, and reflects the highest credit upon the learned judge who tried the case.

Finding no error in the record, the judgment is hereby in all things affirmed.

*Affirmed.*

[Rehearing denied May 4, 1910.—Reporter.]