Sam **HOOVER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 37965.

Court of Criminal Appeals of Texas.

April 21, 1965.

Rehearing Denied June 9, 1965.

Warren Burnett, Odessa, Luther E. Jones, Jr., Corpus Christi, for appellant.

Frank Briscoe, Dist. Atty., Sam Robertson, Carl E. F. Dally and Gus J. Zgourides, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The appellant was convicted of being an accomplice to robbery with firearms; the punishment, sixty years.

The indictment alleged that on or about March 11, 1964, and before the commission of robbery by firearms of Mair Schepps, by John Oscar Young, Samuel Spivey, and Calvin Sellars, the appellant did unlawfully and wilfully advise, command, and encourage them to commit said offense, the appellant not being present at the time of the commission of the robbery by said three named persons. The indictment also alleged the taking of $3,900 in money, a man's diamond ring, and a woman's diamond necklace, from Mair Schepps.

The evidence reveals that after Spivey, Young, and Sellars had been advised by the appellant that Schepps had $300,000 in money in his home, the appellant encouraged them among other things, to "get you a car and equipment (guns) and get ready to go in," and he also told them where to look for the money in the house. These three men, wearing masks, two of whom were armed with pistols and one with a sawed-off shotgun, went to the Schepps's home about 7 P.M., March 11, 1964. While they were preparing to enter the house, Mrs. Tuck, a nurse employed by Schepps, left the house to go to a nearby garage apartment and she was knocked unconscious by one of the masked men. Two of the robbers entered the main house and violently assaulted Mr. and Mrs. Schepps and the third robber brought Mrs. Tuck into the house shortly thereafter.

After numerous unsuccessful inquiries about the $300,000 the robbers' acts of violence and torture increased, to compel the Schepps to reveal the location of the money.

Mrs. Schepp's jaw was broken, and some of her teeth were knocked out and others loosened; she was burned across the abdomen with a heated butcher knife; she was repeatedly burned on her face and body with cigarettes, and also repeatedly shocked with an electric wire placed to her teeth, breasts and private parts; a fireplace poker and a pistol were inserted into her vagina; and she was shot in the thigh with a .44 magnum pistol as she lay prostrate on the floor. Mr. Schepps was severely and brutally beaten and lay unconscious for short periods of time during the three-hour attack. The injuries of Mrs. Tuck were not so serious, but she required several days of hospitalization. The Schepps's ten-month old baby was threatened, and a shot was fired into the baby bed where the child lay. Most of the furniture and furnishings in the house, especially those on the second floor, were torn, broken, demolished, and scattered in an intense and violent search for the $300,000 reportedly hidden therein.

Mair Schepps testified that he was in fear of his life and serious bodily injury when the robbers, against his will, took from him $3,900 in money, a man's diamond ring of 4.83 carats, and a 2.70 carat diamond necklace.

A pair of slacks, a black shirt, a hat, a pair of gloves, and rolls of adhesive tape were found in a garbage can near the home of Calvin Sellars. Fibers taken from the articles were shown to be identical with those removed from the carpet in the Schepps home, and an examination of traces of human blood on some of the articles revealed the blood to be the same type as Mr. Schepps's. Also a human hair taken from the shirt was shown to be identical to one removed from Sellars. Furthermore, the officers recognized the trousers found in the can as the same ones Sellars was wearing at the time of a previous arrest.

Upon a search of appellant's house following the arrest of the three robbers, the officers found therein two diamonds, one weighing 4.83 carats and the other 2.70 carats. A jeweler testified that he had at a time before the robbery mounted the two diamonds for the Schepps's and that the two diamonds, which were shown him while testifying, were identical to those mounted by him for the Schepps's. Mr. Schepps also identified the 4.83 carat diamond exhibited to him at the trial as belonging to him or "that it looks exactly like my diamond" taken from him during the robbery.

When arrested for the Schepps's robbery, Sellars made an oral statement which led to the recovery of part of the jewelry that came from the Schepps's home, and he also implicated Young, Spivey and appellant in the robbery. A .44 Magnum revolver recovered from the person to whom Young had given it for safekeeping was shown to have been the same gun from which the shots were fired in the Schepps's home. The shotgun and masks recovered were also identified as those used during the robbery.

Testifying as a state's witness, Samuel Spivey stated that appellant told him and Young about the $300,000 in money in the Schepps's home; that after he and Young had viewed the Schepps's house, they told appellant that another man was needed for the job and he selected Sellars. Spivey then detailed how the robbery was committed.

On the morning after the Schepps's robbery, Billy Lyons, whose mother operated an apartment house for appellant, saw Young in appellant's office. After Young left, the appellant exhibited to Lyons a man's large diamond ring, saying this "probably" came from the Schepps robbery. In a division of the loot, Young had received the Schepps diamond ring. After Lyons had given the officers a written statement about what appellant told him and what he saw in appellant's office, the appellant talked with Lyons and his mother. After implied threats against them, the appellant gave them $150 to leave the state. After their departure from the state, Lyons

and his mother were located a few days before the instant trial.

The appellant did not testify but called witnesses who testified that they saw and conducted business with the appellant on Saturday preceding the robbery. Hence, during that time, he could not have been planning the robbery with Spivey and Young. Several other witnesses testified that they telephoned the appellant at his home numerous times between 7 P.M. and 11 P.M. on the night of March 11, and never received an answer.

Appellant's wife testified that because of her illness she disconnected the residence telephones about 5 or 5:30 P.M. on March 11 and left them disconnected until the next morning; and that she never heard the appellant, who was at home during this time, talk with anyone by telephone. She identified the two diamonds exhibited to her during the trial as belonging to her and the appellant, or two like them, prior to March 11.

The appellant introduced in evidence the written statement of Samuel Spivey. In it Spivey states that he and two others robbed three persons in a residence on Memorial Drive in Houston, expecting to find $300,000 in money, but after a thorough search and much abuse of these persons, especially of one woman, they were unable to locate the large sum of money; that after leaving the house the three split the money they had taken and he received about $1,100 as his share, and he gave one of the other robbers a ring taken during the robbery.

By specially requested charge the appellant sought to have the jury instructed that if he was present during the robbery of the Schepps's home to return a verdict of not guilty; and that in contemplation of law, he would be deemed to have been present during such robbery if during its commission he talked over the telephone with one or more of the robbers and thereby attempted to assist in the perpetration of the robbery.

The testimony of the state was sufficient to show that an assault and the taking of property at the Schepps's home had occurred before the appellant had said anything by telephone to one or more of the robbers in an attempt to assist in the commission of the robbery.

5 Branch (2), 23, Sec. 2589, reads as follows:

"In a robbery case it is not necessary to prove that all the property alleged was taken, and proof of the taking of any part thereof is sufficient in that regard. Harris v. State, 34 Crim 497, 31 S.W. 382; Jones v. State, [44 S.W. 152] 43 S.W. 162; Maloney v. State, [Tex.Cr.App.], 45 S.W. [718] 719; White v. State, [Tex.Cr.App.] 57 S.W. 100; Pones v. State, 43 Crim 201, 63 S.W. 1021; Robinson v. State, 62 Crim 645, 138 S.W. 704; Jones v. State, 64 Crim 510, 143 S.W. 621; Taylor v. State, 89 Crim 618, 232 S.W. 525; Bybee v. State, 122 Crim 202, 54 S.W.2d 142; Bailey v. State, 139 Crim 260, 139 S.W.2d [599] 500; Howell v. State, 154 Crim 8, 224 S.W.2d 228; Hall v. State, 160 Crim 553, 272 S.W.2d 896; Gizzo v. State, 160 Crim 593; 272 S.W.2d 898."

This court has also held that in robbery cases the fact that the court charged in the terms of the indictment would not affect the above rule. Jones v. State, 171 Tex.Cr.R. 608, 352 S.W.2d 270.

In a case of robbery by the use of firearms, this court said in Brown v. State, 61 Tex.Cr.R. 334, 136 S.W. 265 that:

"Whenever a party is held up, and put in fear of his life by having a gun presented at him, and told to put up his hands and drop certain property, and he is forced to do so, and the party with the gun takes charge of the property, the offense of robbery is complete, and it is immaterial whether he not only expected to get other property as well as that he knows he is taking through force and fear."

Further, to submit the specially requested charge to the jury as presented would be singling out certain evidence and would constitute a comment upon the weight of the evidence, hence improper. Art. 658 Vernon's Ann.C.C.P.; Fulcher v. State, 163 Tex.Cr.R. 177, 289 S.W.2d 588. The refusal of the specially requested charge was not error.

It is insisted that the trial court erred in admitting into evidence the two diamonds claimed by the state to be a part of the robbery loot on the ground that they were seized during an illegal search of his home by officers acting under a void search warrant.

The appellant called his wife as a witness and she testified that the two diamonds exhibited to her during the trial, either belonged to her and the appellant, or two like them, before March 11 and that the appellant did possess either these diamonds or similar ones on March 17.

The identity of the two diamonds was sufficiently shown by the evidence to authorize the finding that they belonged to the Schepps's and were taken from them in a robbery on March 11, and that the diamonds were found in appellant's home, when appellant was present, on March 17.

Appellant is in no position to complain of the search of his house because he introduced the testimony of his wife showing that they either owned the two diamonds, or two like them, before March 11 and on March 17. 5 Tex.Jur.2d 704, Sec. 446. Also, the record further reflects that while Officer Hodges was testifying about the search, he was asked and responded as follows:

"Q: "What happened when you arrived at the defendant's home?

"A: Mr. Hoover—I walked up and knocked on the door. Mr. Hoover came to the door. I advised Mr. Hoover I had a search warrant. Mr. Hoover told me a search warrant was unnecessary, to come on in and look anywhere I pleased."

Appellant objected to the failure of the court to charge the jury, that, unless from non-accomplice evidence they believed beyond a reasonable doubt that there was corroboration of the testimony of the accomplice witness Spivey that the appellant advised, commanded, and encouraged the co-idictees to commit the robbery, then to find the appellant not guilty; and that they could consider the accomplice testimony only if from the non-accomplice testimony they believed beyond a reasonable doubt that there was corroboration of the state's evidence that the co-indictees committed the robbery.

To comply with the objections to the charge, would increase the burden of proof beyond the statutory requirement that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence *tending to connect the defendant with the offense committed.* Hence the refusal to respond to said objections was not error. Art. 716 V.A.C.C.P.

The evidence is sufficient to support the conviction, and no error appearing the judgment is affirmed.

Opinion approved by the Court.

MORRISON, Judge (dissenting).

Appellant was constructively present at all times by virtue of the three telephone conversations with his confederates during the course of the robbery. In the first call he asked one of his partners in crime if they had found anything, received a negative reply and said that he would call back later. In the second call they reported to him that they had found the items listed in the indictment. In the third call he instructed them to look in the deep freeze and in the attic in their search for the $300,000 which all parties supposed was concealed somewhere in the house.

Under the rule announced in Schwartz v. State, 158 Tex.Cr.R. 171, 246 S.W.2d 174, and discussed in Vol. 1, Vernon's Ann.P.C. XII; XV, appellant, if not by the first telephone call, then by all three calls, was doing something which associated him with the execution of the unlawful act at the very time the robbery was being committed making him a principal and not an accomplice as submitted in the court's charge.

The converse of what we have here was ably stated by this Court in Serrato v. State, 74 Tex.Cr.R. 413, 171 S.W. 1133, wherein the Court said:

"It is a correct proposition of law that one charged in an indictment as a principal cannot be convicted as an accomplice to the crime—they are separate and distinct offenses.

"* * * Our decisions hold that the dividing line between principals and accomplices is that to constitute one a principal he must be doing something in furtherance of the common design, at the time the offense is committed, whether present or not, while an accomplice is one who, though having advised and agreed to its commission, is not present when the offense is committed, and who is not doing anything at the time in furtherance of the common design * * *."

In the relatively early case of Bass v. State, 59 Tex.Cr.R. 186, 127 S.W. 1020, this Court said:

"If the party charged, though not actually present, is engaged in or is doing something in the chain of causation which leads up to the offense and·is a necessary part of its accomplishment, he is a principal, though he may not be at the immediate time actually present. * * *"

See also Hext v. State, 104 Tex.Cr.R. 46, 282 S.W. 242 and White v. State, 154 Tex.Cr.R. 489, 228 S.W.2d 165.

I respectfully dissent.