## UNITED STATES v. ALUMINUM CO. OF AMERICA et al.

District Court, S. D. New York.

Nov. 1, 1939.

Walter L. Rice, Sp. Asst. to Atty. Gen. (Thurman Arnold, John C. Herberg, and F. Gwyn Harper, Jr., all of Washington, D. C., Norman A. Adler, of New York City, and James S. Kemper, Jr., Ralph Andresen, Creighton R. Coleman, and Gareth M. Neville, all of Washington, D. C., of counsel), for the United States.

Hughes, Richards, Hubbard & Ewing, of New York City, and Smith, Buchanan & Ingersoll, of Pittsburgh, Pa. (Charles E. Hughes, Jr., Leighton H. Surbeck, and William T. Gossett, all of New York City, and William Watson Smith, Frank B. Ingersoll, and Leon E. Hickman, all of Pittsburgh, Pa., of counsel), for Aluminum Co. of America and others.

Milbank, Tweed & Hope, of New York City (Morris Hadley, Timothy N. Pfeiffer, and Edgar P. Baker, all of New York City, of counsel), for Aluminium Limited and others.

Baldwin, Todd & Young, of New York City (Roger Sherman Baldwin and Walter W. K. Bennett, both of New York City, and A. L. Nash, of Manitowoc, Wis., of counsel), for Aluminum Goods Mfg. Co.

Hughes, Richards, Hubbard & Ewing, of New York City (Charles E. Hughes, Jr., Leighton H. Surbeck, and William T. Gossett, all of New York City, and John H. Watson, Jr., and M. B. & H. H. Johnson, all of Cleveland, Ohio, of counsel), for Aluminum Manufacturers, Inc.

CAFFEY, District Judge.

On June 1, 1939, the day the Government closed taking testimony in chief (minutes, pp. 18307–26), it offered in evidence against Alcoa one hundred and seventy three exhibits or exhibits for identification (all of which, for convenience, will be called exhibits) and five extracts from the testimony of Edward K. Davis (listed in exhibit 910 for identification; minutes, p. 18308). At the same time it offered against Aluminium fifty five of the exhibits, four extracts from the testimony of George D. Haskell and five from the testimony of Roger D. Babson (listed in exhibit 1007 for identification, minutes, p. 18307). Seventy eight of the papers offered against Alcoa have already been admitted against Aluminium (minutes, pp. 17262–3); forty are not offered against Aluminium.

All the documents and oral testimony are claimed by the Government to be admissible because in furtherance of a conspiracy. This conspiracy is alleged to have been between either (1) Alcoa and foreign producers of aluminum or (2) Alcoa, Aluminium and such producers or (3) some of them (including Alcoa, if offered against it, or Aluminium, if offered against it). It is further alleged that the conspiracy was to restrict imports into the United States or to restrain international trade with persons located in the United States or interstate trade within the United States in aluminum or in its components or products. For convenience, this will be referred to as the conspiracy and the components and products will be included as aluminum.

Several explanatory observations should be made: (1) Some items of evidence tendered are competent even though no conspiracy be established as against an objecting defendant. Their admission, therefore, will not imply a finding that a conspiracy existed. (2) The only inquiry of consequence is confined to other items, which are not admissible unless the conspiracy be shown. (3) There is no occasion to segregate the items into classes. The concern is with each separate item and the sole question as to it is whether it shall be admitted or excluded. (4) There are a number of instances where a group of documents have been offered as a single exhibit and where it is plain that a portion is inadmissible because not authenticated or because not in pursuance of the conspiracy or upon some other good ground. In those instances where I have discovered a portion which would have been admissible if separately offered, I have admitted them (though the Government, because of having offered both competent and incompetent evidence together, is not entitled to have them come in). Nevertheless, if I have overlooked some such commingled documents part of which would have been admissible if separately offered, the fault should not be attributed to the court.

On June 13 and 22, 1938, I declined to receive, and on October 13 and 24, 1938, I repeated my refusal to receive, evidence subject to connection. My reason, as explained at the time, was that in a case like the one at bar, where the evidence is vo-

luminous and complicated, it would be unduly burdensome, if not impossible, to remember what had been and what had not been connected (minutes, pp. 2318–9, 3042, 3050–1, 4280, 5069, 12917–8, 12938–40). On June 23, 1938, I further explained my difficulties and afforded the parties opportunity to submit briefs on several points with respect to the law of conspiracy (pp. 3067–72). These briefs were rather general, but they were helpful and have been fully considered.

At times the Government has affirmatively disclaimed intention to offer testimony on the theory of conspiracy (for example, pp. 4205, 12914, 14755–6, 14840, 14842, 14845, 15406A, 15793, 15800, 15847–51, 15856, 16681–3). Once the Government asked for a ruling on the question when there was nothing before the court on which it was legally possible to determine the conspiracy issue (pp. 15770–75). At times the bases of offers have been obscure.

The conspiracy theory has been referred to frequently during the trial. Discussions of it or of phases of it will be found in the minutes at pp. 3041–57, 3075–9, 9511–72, 10112, 10141–6, 10161–300, 10304–32, 10365–401, 12557, 12689–96, 12908–93, 15229–0, 15242–99, 15367–8, 15406A, 15412–3, 15770–5, 15784–8, 15793–805, 15846–51, 15856, 16522–43, 16594–5, 16679–86, 16708–12, 17619–23, 18147–59A. In numerous such instances I have rendered decisions, accompanied by statements of my reasons therefor and sometimes by citations of authorities (pp. 9564–8, 10240–42A, 10278–80, 10313–4, 10317–8, 10365–8, 12957–64, 15277–82, 15922–6, 15412–3, 15479–0, 15547, 15600–1A, 15653–4). What was covered by these decisions will not be repeated.

Where I have already made rulings, for which grounds were assigned and authorities cited, I think it would be useless to add anything. There remains, however, one aspect of the subject of conspiracy as to which controversy between counsel has prevailed throughout the trial and as to which I have not yet expressed my views to them. This controversy should now be definitely determined. Indeed, a determination is essential. As will be obvious, the conclusion adopted will provide the applicable angle of approach to, and perhaps it may rightfully be said will furnish the necessary guide for use in examination of, the material sought to be introduced.

The undecided question may be stated thus: What measure of proof of the existence of a conspiracy is required before evidence of the acts, conduct or declarations of an alleged member of the conspiracy, done or made pursuant to and in furtherance of the object or in execution of the purpose of the conspiracy, is competent against other members of the alleged conspiracy? In so far as I can see, that is the only really controversial issue of law to be resolved by the court as a basis for passing on the admissibility of the documents and testimony under consideration.

Rule 43(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, peremptorily directs this court to admit everything which is admissible "under the rules of evidence applied in the courts of general jurisdiction" of New York State. It is pertinent, therefore, to ascertain what is the governing rule (if any) which those courts have prescribed on the point presented.

In 1863 the Supreme Court of New York, then a court of general jurisdiction, held that, before a declaration or an act of one alleged conspirator can properly be admitted against an alleged co-conspirator, the conspiracy must be "clearly proved;" that the evidence must be sufficient to "establish the fact" of the existence of the conspiracy; that evidence of it merely "sufficient to submit to a jury * * * will not answer the requirement;" and that such evidence, in support of a conspiracy, must be strong enough to make it the jury's "imperative duty to find in the affirmative, if the question were to be submitted to them, and where the court would set their verdict aside in case they did not so find." Jones v. Hurlburt, 39 Barb. 403, 409, 410.

In so far as I can discover, enunciation of the criterion just stated has never since been repeated or approved by a New York court of general jurisdiction. It is worthy of note also that in Cuyler v. McCartney, 40 N.Y. 221, 243, a dissenting judge called it a dictum.

In 1877, fourteen years later, the General Term, First Department, of the New York Supreme Court squarely repudiated the Jones v. Hurlburt, supra, doctrine. In People v. Tweed, 11 Hun. 195, 198, affirming a judgment of conviction, the appellate court quoted what had been said in an

**4**

opinion by the trial court as follows: "The gist of the action was an alleged conspiracy between the defendant Tweed and one Watson to defraud the city and county of New York of large sums of money. * * * Whatever tends to prove the conspiracy and its objects and purposes, and, if sufficient evidence be given to carry the case to the jury upon the question of conspiracy, whatever declarations or acts of either party that tend to prove its objects or purposes, or accomplishment, are always admissible."

■ In so far as I can discover the test laid down in the Tweed case has stood unimpaired for more than sixty years. No subsequent decision in conflict with it by a New York court of general jurisdiction has come to my attention. In brief the New York law is that if there be enough evidence properly to permit a jury to find that a conspiracy charged existed between two or more persons, then thereafter, so long as the conspiracy continues, evidence of declarations and acts of one of the conspirators in furtherance or execution thereof is admissible against the other member or members of the conspiracy. This has now become the settled law in New York State. People v. McKane, 143 N.Y. 455, 470, 38 N.E. 950; People v. Cassidy, 213 N.Y. 388, 391, 107 N.E. 713, Ann.Cas.1916C, 1009; People v. Becker, 215 N.Y. 126, 148, 109 N.E. 127, Ann.Cas.1917A, 600; People v. Connolly, 253 N.Y. 330, 340, 171 N.E. 393; People v. Luciano, 277 N.Y. 348, 358, 14 N.E.2d 433.

Some decisions of the Federal courts are in accord with those of the New York courts. In so far as I have discovered, however, none of the former has spoken as clearly or as unambiguously as the latter with respect to the particular matter. The law of New York on the point being clear and unambiguous, it would be wasteful to go into the Federal decisions.

In the condition of the authorities described, by virtue of Rule 43 the court is bound by the New York rule in the case at bar.

The problems for solution as to each item, therefore, are reduced to two: (1) Whether there is evidence from which a jury would be free to find that at the relevant time the conspiracy was in existence. (2) If the answer be in the affirmative, (a) then, if the evidence offered be a document, to determine whether its authenticity has been established and if so, whether it constituted something said or done by one of those prima facie shown to be a conspirator in furtherance or in execution of the conspiracy; and (b), likewise, if the evidence offered be oral testimony, whether the fact covered by it was pursuant to or in execution of the conspiracy.

Beyond what has already been said, there does not seem to me to be any occasion for elaboration of the legal aspects of either of the two problems described. The controlling rules affecting other aspects are well settled. I think there is no ground for reasonable dispute as to what they are. It will be sufficient, therefore, to call attention to a few pertinent decisions to which I owe obedience. These are Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 250, 38 S.Ct. 65, 62 L.Ed. 260, L.R.A.1918C, 497, Ann.Cas.1918B, 461; Delaney v. United States, 263 U.S. 586, 590, 44 S.Ct. 206, 68 L.Ed. 462; United States v. Kelley, 2 Cir., 105 F.2d 912, 916; and United States v. Nardone, 2 Cir., 106 F.2d 41, 43.

■ It should be noted particularly that in the Kelley case the court said [105 F.2d 916]: "The declarations of a fellow conspirator are competent only when made in pursuance of the common object; they are admitted because they are a part of the execution of the plan, and have been impliedly authorized by the others."

Note also that in the Nardone case the court said [106 F.2d 43]: "the fact that one conspirator tells another something relevant to the conspiracy does not alone make the declaration competent; the declaration must itself be an act in furtherance of the common object; mere conversation between conspirators is not that, any more than the declaration of an agent outside the scope of his duties."

■ I have reviewed all the evidence on the subject of the existence of the conspiracy between two or more of those charged to have been members during the period covered by the exhibits and testimony sought to be introduced. It suffices for the moment to say that I think the record, as it stood on June 1, 1939, when the Government made its offer, contains enough to warrant rendition by a jury of a verdict, which it would be improper to disturb, that (omitting a Norwegian company which cuts no figure in this branch of the case) such a conspiracy existed

between two or more of the following: Alcoa, Aluminium, British Aluminium Co., Ltd. (the British company), L'Aluminium Francais (the French company), Aluminium Industrie Aktiengesellschaft, Neuhausen (the Swiss company) and Vereinigte Aluminium Werke A. G. (the German company, frequently called V. A. W., minutes, pp. 2313–4, 9491).

In its briefs and at the trial the Government has frequently referred generally to the alleged conspirators (aside from Alcoa and Aluminium) as the foreign producers of aluminum, without specifically identifying them. Confessedly three of these foreign producers charged with conspiracy are the British company, the French company and the Swiss company. There is some ambiguity, however, about the present position of the Government, as I understand it, however, as to whether it means to charge that the conspiring German producer is V. A. W.

There has been talk about who owns V. A. W. (see, for example, minutes, p. 4904); but, so far as concerns the question under consideration, all that is immaterial. Regardless of who is the owner, incontrovertibly it is, and ever since its organization has been, a producer of aluminum in Germany. The bill itself (paragraphs 54, 77, 78, 79, 80 and 82) makes plain that V. A. W. is the German producer which the Government intended to charge as being, and has there charged as being, the fourth foreign member of the conspiracy. At this stage at least, it is not permissible for it to abandon its position there taken.

Moreover, the Government is definitely committed to the same position by the proceedings at the trial. There it flatly asserted that V. A. W. was such producer in Germany and a member of the conspiracy (e. g., minutes, pp. 3042–6, 3061, 9516–7, 9539, 9562, 10145, 10179, 10182–3, 10192, 10195, 12912–4, 12919, 12934, 12945, 16441–2, 16523, etc.).

It follows of necessity from its pleading and certain insistences in its briefs, as well as from numerous statements by its counsel at the trial, that those claimed by the Government to be members of the conspiracy are the ones I have named above.

The only possible exception to the foregoing I have discovered, worthy of further comment, is an argument during the trial and in the briefs by the Government that Metallgesellschaft and The Ore & Chemical Corporation were additional conspirators (e. g., minutes, pp. 10174–5, 10193–4, etc.). As will be pointed out later, however, and as was pointed out at the trial, there is no foundation in the evidence for any such view.

It is to be observed that I have stated no period or periods of participation by any member of the conspiracy. For the present purpose it is as unnecessary as it is difficult to state with precision the duration of such participation. For the moment indeed it would be confusing. It will be material to determine the pertinent dates and the pertinent membership charges only when dealing with the several items of evidence which are to be passed on and these will be determined when admitting or excluding individual items.

So also I have not made, and I do not now make, any committal as to whether I would agree with a jury verdict such as I think would conform to the applicable test. In fact I feel strongly that it would be premature, as well as inappropriate at this stage, to express my views on that phase of the case. It is sufficient that evidence be admitted or excluded. Nevertheless, so far as concerns dates or terms, as already indicated I shall bear them in mind when I take up items of evidence later.

There are several reasons for refraining from present comment which goes beyond what is imperative. The first is the great length of statement that would be necessary if I should summarize the evidence on which I rely in holding that it is sufficient to carry the conspiracy question to a jury. The second, and more important, is that at this time I am merely dealing with evidence questions which unavoidably relate to matters that hereafter must be finally determined on the merits (after further proof is taken) and, hence (as I feel), that it would be unwise, if not improper, now fully to set forth the testimony which has impressed me as adequate to meet the applicable test.

In this connection I deem it prudent to caution counsel not to draw or even attempt to draw, from my present preliminary finding, any inference as to what will probably be my ultimate finding with respect to any of the issues of this case. So also, in order to avoid misapprehension, I repeat, what I have several times stated at the trial, no evidence ruling is to be

taken as having any bearing, and the rulings now made are without prejudice to, the so-called alien status contention by Aluminium that complaints of its conduct are outside the jurisdiction of this court.

In the early stages of the preparation of a statement of my holdings I endeavored to divide them into groups which would denote the grounds for the rulings. As I progressed, however, it became obvious that the lines of demarcation between documents on which the issue of admissibility turns are frequently narrow and that, if I adhered to my first plan, the available time would be insufficient to permit completion of my task by the date fixed for the resumption of taking testimony. In consequence, except as to the Gesellschaft exhibits (with various numbers from 487 to 556), I abandoned the original plan.

As I understand, counsel feel that it is practically peremptorily demanded that, before additional testimony is offered, they know where they stand with respect to the evidence offered June 1 last (pp. 16532, 16537–8). With that view I agree. The only way I can accomplish the desired purpose is (save in the single instance mentioned above) to omit statement of the reasons for my rulings on the many separate items.

Accordingly, the disposition will be as follows:

I. Exhibits 364, Item 4 of 373 and 376 are admitted against Alcoa and Exhibit 376 against Aluminium. Exhibits 365, 368, Items 1, 2 and 3 of 375, 377 (items 1 and 10), 379, 385 and 386 (items 1, 2, 5 and 6) are excluded as against Alcoa.

II. Fifty nine letters and cables, with exhibit numbers ranging from 487 to 556, have been referred to by counsel as the Gesellschaft exhibits. These passed between Metallgesellschaft of Frankfurt-on-Main, Germany (hereinafter called Gesellschaft), and The Ore & Chemical Corporation of New York City (hereinafter called Ore & Chemical); each having sent some to the other. They bear sundry dates running from October 27, 1926 (Exhibit 546), to November 22, 1934 (Exhibit 543). · Seventeen were dated between July 1, 1931, and February 14, 1936, the extreme limits of the existence of the 1931 Foundation Agreement (Exhibit 744). The entire fifty nine are offered against Alcoa and fifty two of them against Aluminium.

Many of the papers are wholly irrelevant. Others are of but trifling, if any, significance. So also it would at least involve a strain to deem them, if sent by a conspirator, to have been in furtherance or execution of the conspiracy. Some actually tend strongly to negative the existence of a conspiracy. Nevertheless, for the present purpose it will be assumed that (1) during the entire period covered by them V. A. W. was in the conspiracy with Alcoa and after June 4, 1928, when it was organized, with Aluminium; (2) all the communications were sent and received during the period of the conspiracy. On these assumptions the inquiry is whether any of them would be admissible against either Alcoa or Aluminium.

It is to be emphasized that, save the two later mentioned, none of the documents were signed or purport to have been signed by V. A. W. itself or by Van der Porten, its head (minutes, pp. 2313, 2907–8, 9529, 10197), but that all (except the two) were signed either by Gesellschaft or by Ore & Chemical. On the assumptions stated, the sole question as to all but two is whether either Gesellschaft or Ore & Chemical (a) was a member of the conspiracy or (b) is shown by the evidence to have been authorized by V. A. W. to act for it in making in its behalf any of the admissions or statements contained therein.

As I view the evidence, it is indisputable, as indicated at pages of the minutes hereafter noted, that it affords no warrant for a jury verdict, which it would not be the duty of the court to set aside, that Gesellschaft or Ore & Chemical ever conspired with Alcoa or with Aluminium; nor is there warrant for a verdict of that kind that either Gesellschaft or Ore & Chemical was authorized by V. A. W. to make an admission or statement in its behalf with respect to either the existence or the furtherance or execution of a conspiracy of which V. A. W. was a member.

If what has just been said be correct, then obviously it follows that the contents of the letters and cables under consideration would be rank hearsay.

It will be taken as true that a jury might properly find that Gesellschaft was a selling agent for V. A. W. and that Ore & Chemical was employed by Gesellschaft to act as its representative in selling aluminum in the United States (minutes,

pp. 10106–11, 10115–6, 10128, 10130, 10134–7, 10163–6; Exhibit 25, minutes, p. 4904; Exhibit 140 (printed) pp. 640, 646, 652, 658, 662), although there is testimony pointing the other way (minutes, pp. 16394–402). Even though, however, the relationships of Gesellschaft with V. A. W. and of Ore & Chemical with Gesellschaft appeared to be those asserted by the Government, that is not enough, nor is there elsewhere in the record enough, to prove that either Gesellschaft or Ore & Chemical had sufficient authority from V. A. W. to remove the documents from the realm of hearsay.

As I feel, in no event could a jury verdict stand which went further than I have stated will be taken as true. There is wholly lacking evidence which would sustain a finding that, as an incident to carrying on their respective sales duties or otherwise, Gesellschaft or Ore & Chemical was commissioned by V. A. W. to concede or to show that V. A. W. was a conspirator, much less is there any evidence to support a finding that Gesellschaft or Ore & Chemical has ever borne any agency relationship to Alcoa or Aluminium arising out of concert with either.

■ A showing of authorization to make the statements contained in the exhibits is manifestly a condition precedent to their admissibility, as was held several times during the course of the trial (minutes, pp. 9564–8, 10146, 10240–242A, 10278–80, 10312–3, 10317–8, 10365–8.) Cf. Garnsey v. Rhodes, 138 N.Y. 461, 465, 466, 34 N.E. 199.

On February 1, 1939, Exhibit 493 was offered in evidence. Its admission was sought on the conspiracy theory (minutes, pp. 10361–2). Whether admissible was not finally passed on previous to June 1, 1939, because to then some of the promised briefs dealing with the question had not been furnished.

There is one feature of Exhibit 493 and Exhibit 556, referred to above, which renders them different from any other of the Gesellschaft group and which deserves special mention. They are the only ones of the Gesellschaft exhibits purporting to contain anything emanating directly from V.A.W. It will be sufficient to discuss Exhibit 493. What is said as to one exhibit will govern the other.

Exhibit 493 consists of what appear to be an original covering letter from Gesellschaft to Ore & Chemical and a copy of an enclosed letter from V. A. W. to Gesellschaft.

■ Plainly what is said in the covering letter does not establish the authenticity of the enclosed copy; and there is no evidence whatever which would support a finding that this copy was executed by V. A. W. In consequence the copy (the only material part of the exhibit) is incompetent. In re Ladue Tate Mfg. Co., D.C., 135 F. 910; Consolidated Grocery Co. v. Hammond, 5 Cir., 175 F. 641.

I do not think the cases relied on by the Government sustain its contention with respect to any of the Gesellschaft exhibits. Those decisions seem to me readily distinguishable on their own facts from the case at bar.

The result is that all the Gesellschaft exhibits will be excluded as against Alcoa and as against Aluminium.

III. Exhibits 597, 601, 776, 777, 780, 781, 790, 793, 794, Item 1 of 795, Item 1 of 801, 802, 804, 805, 807, 817, 826, 830, 833, 836, 842 to 844, 847 to 852, 858 to 860, 862, 863, 871 and 872 are admitted against Alcoa. All other exhibits or parts of exhibits bearing numbers from 594 to 880, inclusive, are excluded as against Alcoa.

IV. Items 2, 3, 4, 5, 6, 7 and 10 of Exhibit 816 are admitted against Aluminium. Exhibit 800 and the other items of Exhibit 816 are excluded as against Aluminium.

V. Extracts from the testimony of Edward K. Davis set out in the minutes pp. 15414–5 and 15485–94 are admitted against Alcoa. All other extracts from his testimony offered against Alcoa are excluded.

VI. The portion of extracts from the testimony of Mr. Haskell and from the testimony of Mr. Babson set out in the minutes at pp. 2869, 3079 and 3149 are excluded as against Aluminium. All other parts of the extracts from such testimony offered against Aluminum are admitted against it.