**Sam HOOVER, Petitioner-Appellant,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellee.**

**No. 29587.**

United States Court of Appeals,
Fifth Circuit.

March 9, 1971.

914

Warren Burnett, Odessa, Tex., Raeburn Norris, Houston, Tex., Luther E. Jones, Jr., Corpus Christi, Tex., for appellant.

Lonny Zwiener, Asst. Atty. Gen., Crawford C. Martin, Atty. Gen. of Texas, Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert C. Flowers, Asst. Atty. Gen., Austin, Tex., for appellee.

Before RIVES and SIMPSON, Circuit Judges, and NICHOLS *, Judge of the Court of Claims.

RIVES, Circuit Judge:

Hoover, a Texas state prisoner, appeals from the denial of his petition for habeas corpus. A two-count indictment was returned in a criminal district court of Harris County, Texas, charging in the first count that Hoover and three others, Young, Spivey and Sellars, on or about March 11, 1964 committed an armed robbery against Mair Schepps. The second count charges Hoover with the offense of being an accomplice to the commission of the robbery by his three co-indictees. In three separate trials, Hoover was convicted as an accomplice with the punishment, 60 years imprisonment, and Young and Sellars were convicted as principals with the punishment, death. Hoover v. State, Tex.Cr.App., 1965, 390 S.W.2d 758; Young v. State, Tex.Cr.App., 1966, 398 S.W.2d 572; Sellars v. State, Tex.Cr. App., 1966, 400 S.W.2d 559. Spivey was granted full immunity and became the principal witness against Hoover.

After being denied habeas corpus relief by the State convicting court and by the Texas Court of Criminal Appeals, Hoover applied for habeas corpus to the federal district court. That court denied his application and, in a further opinion, denied certificate of probable cause required for appeal. Hoover v. Beto, D.C. 1969, 306 F.Supp. 980. On April 6, 1970, Judge Ingraham of this Circuit granted Hoover's application for certificate of probable cause.

Upon this appeal Hoover urges two claims:

1. That the State convicting court violated his right under the Fourteenth and Fourth Amendments to be free from unreasonable search and seizure by the admission into evidence against him, over his proper and timely objection, of two diamonds, the fruits of a nighttime search of his home made without his voluntary consent by police officers acting under a search warrant based on an affidavit which did not contain sufficient probable cause averments and;

2. That the convicting court violated his right under the Fourteenth and Sixth Amendments to be confronted with the witnesses against him by its admission into evidence, over his proper and timely objection, of hearsay testimony of a police officer as to unsworn out-of-court statements made to the officer by co-indictee Sellars.

We sustain both of Hoover's claims and reverse the judgment of the district court.

The essential elements of the offense of which Hoover was convicted are: (1) that the co-indictees committed the armed robbery as charged; (2) that before the robbery, Hoover advised, commanded or encouraged his co-indictees to commit the offense; and (3) that Hoover was not present at the commission of the robbery.[1]

As to element (1), there was evidence to support the conviction from the victims of the robbery and from Spivey, who turned state's evidence. The robbery was accompanied by the most horri-

---

* Honorable Philip Nichols, Jr., sitting by designation.

1. Those elements are extracted from the following provisions of the Texas Penal Code:

Art. 70. "An accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands or encourages another to commit the offense * * *."

Art. 72. "Accomplices shall * * * be punished in the same manner as the principal offender."

Art. 1408. "If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for life, or for a term of not less than five years; and when a firearm or other deadly weapon is used or exhibited in the commission of the offense, the punishment shall be death or by confinement in the penitentiary for any term not less than five years."

ble brutality and torture, as described in the opinion of the Texas Court of Criminal Appeals, Hoover v. State, *supra*, at 390 S.W.2d 759, 760, only a small part of which we quote:

"After numerous unsuccessful inquiries about the $300,000 the robbers' acts of violence and torture increased, to compel the Schepps to reveal the location of the money. Mrs. Schepps' jaw was broken, and some of her teeth were knocked out and others loosened; she was burned across the abdomen with a heated butcher knife; she was repeatedly burned on her face and body with cigarettes, and also repeatedly shocked with an electric wire placed to her teeth, breasts and private parts; a fireplace poker and a pistol were inserted into her vagina; and she was shot in the thigh with a .44 magnum pistol as she lay prostrate on the floor. Mr. Schepps was severely and brutally beaten and lay unconscious for short periods of time during the three-hour attack. The injuries of Mrs. Tuck were not so serious, but she required several days of hospitalization. The Schepps' ten-month old baby was threatened, and a shot was fired into the baby bed where the child lay. Most of the furniture and furnishings in the house, especially those on the second floor, were torn, broken, demolished, and scattered in an intense and violent search for the $300,000 reportedly hidden therein."

Spivey's testimony made a case for submission to the jury as to element (2), that Hoover advised and encouraged Young, Spivey and Sellars to commit the robbery. He testified that Hoover advised them that Schepps had $300,000 in money in his home, told them where to look for the money, encouraged them to commit the robbery, and during the rob-

bery told them by telephone when Young asked him what he wanted to do about Mrs. Schepps' failure or refusal to tell where the money was located: "Use your own judgment she is a hard case, she's been in the business a long time." Ultimately the robbers failed to locate the large sum of money.

There would appear to be no factual dispute about element (3), that is, that Hoover was not present during the commission of the robbery.[2]

## I.

*Hoover's Right Under the Fourteenth and Fourth Amendment to be Free From Unreasonable Search and Seizure.*

### A.

*Validity of Search Warrant.*

Attached as appendices to this opinion are copies of (1) the affidavit upon the basis of which the search warrant was issued, (2) the warrant itself, and (3) the officer's return on the back of the warrant.

It was conceded in the district court and is conceded here, as it must be, that the affidavit supporting the search warrant does not meet the probable cause standards prescribed in Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. As appears from Appendix 1, the affidavit in relevant part recited that: "My belief as aforesaid is based on the following facts: Information from a reliable source that the above described property is now being concealed at the above address." [App. 294] There was nothing from which an impartial magistrate could judge whether the information was in fact "reliable" or what was the basis of his information.

---

2. There was a legal dispute. Judge Morrison dissented from the affirmance of Hoover's conviction because he considered Hoover a principal rather than an accomplice, saying in part:

"Appellant was constructively present at all times by virtue of the three tele-

phone conversations with his confederates during the course of the robbery.
\* \* \*"

390 S.W.2d at 762.

To sustain the validity of the search warrant, the appellee argues that *Aguilar* is not applicable because the search was prior to that decision.

The search of Hoover's home occurred on March 18, 1964, about three months before *Aguilar* was decided on June 15, 1964. Hoover's criminal trial commenced on July 28, 1964, more than a month after *Aguilar* was decided. His judgment of conviction was affirmed April 21, 1965, and rehearing was denied June 9, 1965 (390 S.W.2d 758), nearly a year after *Aguilar* was decided.

Hoover's counsel make a strong argument that *Aguilar* announced no new doctrine, but, as disclosed in the opinion, 378 U.S. at 110–113, 84 S.Ct. 1509, did no more than apply the principles decided in Nathanson v. United States, 1933, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503; and Ker v. California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. In Riggan v. Virginia, 1966, 384 U.S. 152, 86 S.Ct. 1378, 16 L.Ed.2d 431, the Court, upon granting certiorari, summarily reversed saying simply, "The judgment is reversed. Aguilar v. Texas, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723]", thus applying *Aguilar* to a search conducted by Virginia officers on January 22, 1963 (see 206 Va. 499, 144 S.E.2d 298), long prior to the decision in *Aguilar*. In Doby v. Beto, 5 Cir. 1967, 371 F.2d 111, the defendant had been convicted and his conviction affirmed by the State Appellate Court on June 3, 1964, prior to the decision in *Aguilar*: "Appellant applied [to the State Appellate Court] for rehearing on the basis of *Aguilar*, for the first time asserting that the affidavit did not support the search warrant because of lack of probable cause." 371 F. 2d at 112. This Court held:

> "It is not necessary that appellant rely on the *Aguilar* decision retroactively since his conviction was not final when the decision in *Aguilar* was rendered."

371 F.2d at 113. *A fortiori* in the present case, Hoover need not rely on *Aguilar* retroactively since he had not been tried and convicted when the decision in *Aguilar* was rendered. We conclude that the search of Hoover's home was not based on a valid search warrant.

The convicting court admitted into evidence, over Hoover's timely and appropriate objections, the two large diamonds listed in the officer's return to the search warrant. It is clear that the federal district court should have granted habeas corpus unless those diamonds were admissible in evidence on some basis other than that of the validity of the search warrant.

### B.

### *Consent to Search.*

Can the search of Hoover's home be sustained as based upon his consent? The relevant facts surrounding the search are as follows: The officer's return indicates that he received the warrant at 3:00 A.M. and executed it at 3:30 A.M. There are nine police officers listed as having executed the warrant. The justice of the peace was also present.

Officer Hodges testified on voir dire on the issue of consent:

On Direct Examination:

"Q. (By Mr. Briscoe, the United States Attorney) How did you gain entry into the defendant's home?

"A. (By Witness) I went to the front door and knocked on the door. Mr. Hoover answered the door. I told him who I was, told him I had a search warrant and Mr. Hoover told me that the search warrant was unnecessary, for me to come on in his house and look wherever I pleased." [App. pp. 263–264.]

On Cross-examination (by Mr. Burnett, defense counsel):

"Q. Now, what time of the day or night did you go to the residence of Sam Hoover?

"A. It was about 3:30 in the morning.

"Q. 3:30 A.M.?

"A. Yes sir.

"Q. Not 3:30 in the afternoon?

"A. No sir.

"Q. When you got there you say you knocked on the door?

"A. Yes sir.

"Q. And when Mr. Hoover came to the door it was apparent that you and the other officers were there where you could be seen, weren't you?

"A. Yes sir.

"Q. And some of the officers were in uniform?

"A. I don't believe there were any uniformed officers there.

"Q. But in any event, of the ones you named several of them would be well known to Mr. Hoover as peace officers, isn't that right?

"A. Yes sir.

"Q. Now, the first thing you told Mr. Hoover was that you had a warrant to search his home?

"A. That's right.

"Q. Sir?

"A. Yes sir.

"Q. That was the first thing said? Sir?

"A. Yes sir.

"Q. And after you told him you had a warrant to search his home, what did he say?

"A. He said a search warrant is unnecessary, come on in." [App. pp. 266–267.]

"Q. I believe you told us you knocked on the door?

"A. Yes sir.

"Q. And Mr. Hoover came to the door?

"A. Yes sir.

"Q. And you told him at that time that you had a search warrant?

"A. Yes sir.

"Q. Did you show it to him?

"A. I had it in my hand. I don't know whether he saw it or not. He said a search warrant was unnecessary, to come on in.

"Q. Did you hand the warrant through the door to him and let him read it?

"A. I gave Mr. Hoover the warrant after I stepped through the door.

"Q. You gave him the warrant after you stepped through the door?

"A. Yes sir.

"Q. And he read the search warrant?

"A. Yes. He said something like let me see what you are looking for.

"Q. And he read the search warrant?

"A. Yes sir.

"Q. Now, the purpose of you and the other officers in going there was to search Mr. Hoover's residence, was it not?

"A. Yes, it was." [App. 273–274.]

"Q. You were going—under your warrant you would have searched his house if Mr. Hoover had told you to go away, wouldn't you?

"A. Yes sir." [App. 275.]

Hoover did not testify as to the circumstances under which the officers gained entrance to his home. Defense counsel objected to the admission into evidence of the fruits of the search on several grounds, among them the insufficiency of the factual allegations of the affidavit in support of the search warrant and the failure to establish consent. The trial court did not expressly rule on the sufficiency of the affidavit, and overruled the objection as to consent on the basis that Hoover, "an attorney who tries many criminal cases," told the officers that the warrant was unnecessary. The trial court ruled that Hoover did not merely acquiesce to a

showing of lawful authority, but expressly invited the officers in.

■ The District Court below sustained this finding for two reasons. First, it gave the state court's finding of consent great weight. While a state court's findings of fact are in some circumstances binding, this is not true of the application of federal law. 28 U.S.C. § 2254(d). The state court's determination is not res judicata in a federal proceeding, Brown v. Allen, 1953, 344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469. Nor is the federal court to give it binding weight, Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

The finding that there was consent is not simply a finding of fact, but it includes also a finding of law. The distinction is important.

"Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently. The state conclusions of law may not be given binding weight on habeas."

Townsend v. Sain, 1963, 372 U.S. 293, at 318, 83 S.Ct. 745, at 760, 9 L.Ed.2d 770.

■ The district court stated its second reason for sustaining the finding of consent as being that the prosecution made a prima facie showing of consent which was not contradicted by the defense. Because this was a habeas corpus proceeding the district court correctly held that the burden of proof was on the applicant to show that his constitutional rights were violated. The district court sought to distinguish Bumper v. North Carolina, 1968, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, where a woman was held not to have given consent to a search of her home by telling the officer to "go ahead" after being told that the officer had a search warrant. The district court noted that a finding of no consent was easier to justify in *Bumper* because there the

woman had testified to rebut the prosecution's showing of consent and because *Bumper* was a criminal case going to the Supreme Court by writ of certiorari from a state court appeal. Therefore, the burden of proof was on the prosecution to establish consent and the evidence was more easily rebutted.

The district court stated:

"Here the consent-search issue was determined by a state court of competent jurisdiction in the direct action. *Bumper* is concerned with the quantum of proof brought forth by the prosecution. The record contains no direct testimonial contradiction of the prosecution's claim of consent and proof hereon. Petitioner has declined to offer altogether his testimony on the issue. The Court is unable to, and does not, infer lack of consent from the record as a whole.

"The Petitioner has not met his burden of proof *in this proceeding* to demonstrate lack of consent.

"Petitioner has not met his burden of persuasion here in light of the *prima facie* case made by Respondent in the record. There is substantial evidence to support the finding of consent. This finding is supported by a preponderance of the evidence of record. I so find and hold." 306 F.Supp. at 989.

■■ The Fourth Amendment provides that we are to be secure in our persons, houses, papers and effects against unreasonable searches and seizures. This right, like all others, may be waived. Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Chapman v. United States, 9 Cir. 1965, 346 F.2d 383. The waiver of a constitutional right will not lightly be inferred. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. This burden is not met by showing no more than acquiescence to a claim of lawful authority. Amos v. United States, 1921, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367,

92 L.Ed. 436. Since Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 1081, is applicable to the case at bar, federal law is controlling on the issue of consent. Cunningham v. Heinze, 9 Cir. 1965, 352 F.2d 1, 4. The Supreme Court uses strong language in Bumper v. North Carolina, *supra*, 391 U.S. at 549, 88 S.Ct. at 1792: "A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." The officer's return on the back of the search warrant is record evidence that the search was conducted in reliance on the warrant. Conceding arguendo, however, that the search can be justified on the basis of consent, we cannot agree that Hoover voluntarily consented to the search.

▇▇▇▇ Hoover answered a knock at his door at 3:30 in the morning. There were nine police officers and a justice of the peace present. He was told that the officers had a warrant to search his home. Hoover's stating that a search warrant was unnecessary as opposed to stating "go ahead," does not make an invitation out of acquiescence to a showing of lawful authority. To so hold would do damage to the teaching of Johnson v. Zerbst, *supra*, that a waiver of a constitutional right is not to be lightly inferred.

Respondent strongly urges that Bumper v. North Carolina, *supra*, should not be applied retroactively and that *Bumper* recognizes that searches based on consent are still valid. The contention that there can still be valid searches based on consent is correct. What *Bumper* did hold, however, was that the "consent" granted after the police asserted they had a warrant, was not voluntary.

Hoover need not rely on a retroactive application of *Bumper* to sustain his position here. The law to be applied here is that, while it is possible to give valid consent to search even after the existence of the warrant is made known, the State must show by clear and convincing evidence that the consent is not based upon the warrant and was not coerced by any other factors. Phelper v. Decker, 5 Cir. 1968, 401 F.2d 232; Rogers v. United States, 5 Cir. 1964, 330 F.2d 535. It is conceivable that a person could give a voluntary and uncoerced consent to search even though he had been informed that the officers had a search warrant. But the State would bear the burden of showing that the consent was given sufficiently independent of the warrant to remove the taint of its coercive nature. *See* Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.[3]

The district court emphasized that Hoover "was himself a lawyer with extensive experience in criminal law and its practical realities" and that the officer handed the search warrant to Hoover and he read it. (306 F.Supp. 986, 987) The warrant itself, on its face, *appears* to be valid. (*See* Appendix 2, *infra*.) There was no proof that the affidavit (Appendix 1, *infra*) was attached to the warrant (Appendix 2, *infra*) or that the affidavit was read by Hoover. If that be assumed, under the circumstances confronting Hoover—being awakened by a knock on the door at 3:30 A.M. and confronted by a veritable posse of officers—there was no evidence or valid inference that he was so astute as to have recognized the defect in the affidavit

---

3. The rule announced in *Bumper* is that the warrant is coercive *per se*. Previously, the statement by an officer that he had a search warrant would merely be one of the factors to consider in determining voluntariness. An analogy could be drawn to the effect of Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, which invalidated all in-custody confessions if the accused had not been advised of his right to remain silent or if he was denied access to his counsel. Those persons who went to trial before the date *Escobedo* was decided are not protected by this rule, but they may still show confessions to be involuntary, and failure to warn of the right to remain silent and denial of access to counsel are factors in determining voluntariness.

and to have foreseen how the Supreme Court would later decide *Aguilar,* and hence to have waived the invalidity of the warrant and voluntarily consented to the search. The coercion of the search warrant prevented Hoover's consent from being voluntary.

Further, it should be noted that the search warrant (Appendix 2) authorized the seizure of only one diamond, a 5-carat blue white diamond, while the return (Appendix 3) shows that the officers seized 2 large white stones included in a total of 32 stones, plus many pistols. There can be no claim that Hoover consented, voluntarily or involuntarily, to the seizure of anything more than the one diamond described in the search warrant.

After seizing these diamonds, the officers took them to Steve Chazanow, a jeweler. He testified that the largest stone was a round cut, fine white diamond weighing 4 carats and 83 points and looked the same as a round cut, fine white diamond he had previously mounted for Mr. Schepps; and that the smaller stone introduced in evidence was an emerald cut diamond weighing 2 carats and 70 points and was similar to an emerald cut diamond of that identical weight in a pendant on which he had previously done work for Mrs. Schepps.

## C.

### Was Error Cured by Testimony of Hoover's Wife?

A third theory to justify the admission of the two diamonds into evidence against Hoover was suggested by the Texas Court of Criminal Appeals and by the district court, though apparently for different reasons. The Texas court said:

"Appellant is in no position to complain of the search of his house because he introduced the testimony of his wife showing that they either owned the two diamonds, or two like them, before March 11 and on March 17, 5 Tex.Jur.2d 704, Sec. 446."

390 S.W.2d at 762. The district court remarked:

"The Respondent additionally relies upon the proposition that since Petitioner's wife was subsequently called to testify that the diamonds were theirs (S/F, 920–922) any error in their introduction into evidence was thereby cured, citing Haid v. United States, 9 Cir., 157 F.2d 630; McDonald v. United States, 10 Cir., 307 F.2d 272; Caldwell v. United States, 8 Cir., 338 F.2d 385."

306 F.Supp. at 983.

The authority cited by the Texas court announces the well-recognized principle that,

"Generally, the admission of improper evidence will not constitute reversible error, if the same facts were proved by other and proper testimony, as where defendant voluntarily gives testimony substantially the same as that improperly admitted over objection."

5 Tex.Jur.2d § 446.

One answer, we think, is that Hoover introduced his wife as a witness subsequent to the constitutionally impermissible introduction of the fruits of the unlawful search. That could hardly be a voluntary act within the meaning of the rule.

Only one of the three cases which the respondent cited to the district court, *supra,* can be considered even remotely relevant, *viz.,* McDonald v. United States, 10 Cir. 1962, 307 F.2d 272. There, it was held that the accused, charged with transportation in interstate commerce of stolen property, was not prejudiced by admission into evidence of property seized from his automobile without authority of search warrant, where his counsel's opening statement admitted accused's possession of such property. 18 U.S.C.A. § 2314; U.S.C.A.Const. Amends. 4, 14. That holding was aptly distinguished in Dodge v. Turner, D. Utah, 1967, 274 F.Supp. 285, 294:

" * * * the defendant's opening statement at the trial was reserved un-

til after the state had presented its case and had already introduced the evidence, so petitioner did not himself first bring the evidence into the case as in *McDonald.*"

We forego further elaboration upon this theory because it was not mentioned in any of the briefs or arguments before this Court. The theory must have been abandoned by the respondent, and we think properly so.

## II.

*Hoover's Right Under the Fourteenth and Sixth Amendments to Confront the Witnesses Against Him.*

Hoover contends that he was denied his right to confront the witnesses against him when the oral confession of Calvin Sellars was introduced through the testimony of Officer Stone. The trial court admitted the confession under the hearsay exception which permits the confession of the principal to be introduced in the trial of an accomplice to prove the commission of the offense. IV Wigmore (3rd ed.) § 1079, p. 133. The rule in Texas was well stated in Browney v. State, 128 Tex.Cr. 81, 79 S.W.2d 311 (1935). The court held that the cases which allowed the confession of the principal to be used at the trial of the accomplice

" * * * go no further than to give effect to the general rule that the admissions or confessions of the principal (if they would be admissible if the principal were on trial) are admissible on the trial of the accomplice, not for the purpose of proving the guilt of the accomplice, but for the purpose solely of proving the guilt of the principal. [Citing authorities.]

"Statements in the confession of the principal which relate solely to the guilt of the accomplice, and which throw no light on the principal's actions, should be excluded. [Citing authorities.] However, if the expressions connecting the accomplice with the offense, when eliminated, render the confession incomplete and frag-

mentary, they may be received in evidence. In that event, the trial court should carefully guard the rights of the accomplice on trial by limiting the purpose of the confession to establishing the principal's guilt."

79 S.W.2d at 314. By peculiar coincidence, the rule is discussed at length in a subsequent case in which Mair Schepps, the victim of this robbery, was charged with being an accomplice to the commission of a different offense. Schepps v. State, Tex.Cr.App.1968, 432 S.W.2d 926, 927, 938–943.

Assuming that this rule is constitutionally permissible, it was not complied with here. The officer related several statements implicating Hoover. Their exclusion would not have left the confession incomplete and fragmentary. For example, Officer Stone was questioned as follows:

"Q. Do you recall whether or not Sellars stated at that time during the conversation how the three of them got together?

"A. Yes sir.

"Q. How was that?

"A. Sellars told me that he received a telephone call from Sam Hoover asking him to take part in this robbery and that at a short time after he had the conversation with Sam Hoover that Spivey and John Oscar Young met him at his house." [App. 230–231]

There are other references to Hoover concerning the disposal of loot and to phone conversations with Hoover during the course of the robbery.

The federal district court found that the State trial judge ruled that the hearsay testimony of the confession could be admitted *in toto*, because the references to Hoover were "so hopelessly intwined in the whole text as not to permit a deletion without confusing or obscuring the substance of the confession." 306 F. Supp. 991. The district court agreed, finding that "the references to petitioner

did not form the major portion of the confession."

But the question is not whether the references constitute a major or minor part of the confession. The question is whether there were unnecessary references to Hoover. The sole purpose of most or all of the references to Hoover, particularly the part of the testimony quoted above, could only have been to implicate Hoover. No instructions to the jury could have eliminated the damaging and prejudicial effect on the defense.

The Sixth Amendment's guarantee of the right to confront witnesses was made applicable to the states through the Fourteenth Amendment in Pointer v. Texas, 1965, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. A preliminary question to be decided is whether the rule of *Pointer*, decided April 5, 1965, is applicable to this case.

*Pointer* held that the testimony of the complaining witness at the preliminary hearing could not be used at trial even if the witness was unavailable, because *Pointer* had not been allowed to cross-examine him at the hearing. Barber v. Page, 1968, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255, excluded the testimony of an accomplice given at a preliminary hearing because the accomplice was available as a witness for the state but was not called.[4] Berger v. California, 1969, 393 U.S. 314, 89 S.Ct. 540, 21 L. Ed.2d 508, gave retroactive application to Barber v. Page. In *Berger*, there was some evidence that the missing witness was in Colorado, outside the jurisdiction of the California court. The Supreme Court found that the State of California had not made a good faith effort to secure the presence of the witness. The Court noted that "one of the important objects of the right of confrontation, was to guarantee that the fact finder had an adequate opportunity to assess the credibility of witnesses." The Court also felt that retroactive application of Barber v. Page was clearly foreshadowed by *Pointer*. Though the comment in *Berger* that *Pointer* foreshadowed *Barber* could be read as implying that the retroactivity reaches back only to *Pointer,* the Supreme Court has not restricted the application of the right of confrontation to the states in this manner. *Barber* was a federal habeas petitioner. The Oklahoma Court of Criminal Appeals affirmed his conviction in 1963. Barber v. State, 388 P.2d 320. Brookhart v. Janis, 1966, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314, reversed a conviction because an out-of-court confession of a codefendant was introduced against him. The codefendant was in the state penitentiary at the time but was not called as a witness. Brookhart's trial was in 1962. Parker v. Gladden, 1966, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420, reversed for denial of the right of confrontation a state conviction which had been affirmed in 1963. These holdings as to cases which became final prior to *Pointer* show that in this case Hoover had a right to be confronted with the witnesses against him.

The State advances three arguments to support the admissibility of the hearsay confession. The first, that it may be used for the purpose of showing the commission of the offense by the principal, has already been discussed.

The second is that the admissions of coconspirators are admissible against all conspirators. While it is true that such admissions made in furtherance of the conspiracy and during the course of the conspiracy are admissible, United States v. Aluminum Company of America, D.C. N.Y.1940, 1 F.R.D. 1; United States v. Kaplan, 2 Cir. 1959, 267 F.2d 114, it is also well settled that statements made by way of confession are not. Rimmer v. United States, 5 Cir. 1949, 172 F.2d 954.

The third argument the State advances is that out-of-court declarations may be used as substantive evidence if the declarant is available as a witness. For this argument, the State relies on California v. Green, 1970, 399 U.S. 149,

4. The accomplice was in a federal prison in Texas; the trial was in Oklahoma.

90 S.Ct. 1930, 26 L.Ed.2d 489. The Supreme Court in *Green* held that prior inconsistent statements may be introduced as substantive evidence at trial whether or not the accused had the opportunity to cross-examine at the time the prior statements were made. The rationale of *Green* indicates the criteria to be applied in this case. *See* 399 U.S. at 157–160, 90 S.Ct. 1930.

Prior inconsistent statements made by a witness out of court may be introduced when he is present and testifying at trial, but not otherwise. The language of *Green* indicates that prior consistent statements cannot be used.[5] The issue of whether prior inconsistent statements could be used when the witness testifies that he does not recall making them was left open in *Green,* the Court feeling that the issue was not ripe. 399 U.S. 149, 168–170, 90 S.Ct. 1930.

*Douglas v. Alabama,* 1965, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934, supports the exclusion of the hearsay where the declarant refuses to testify or does not recall making the statements. In *Douglas* the confession of an accomplice was read by the prosecution in the presence of the jury after the accomplice was called to the stand but refused to testify. The conviction in *Douglas* was reversed because the accused could not be said to have the opportunity to cross-examine a witness about a statement imputed to but not admitted by him.[6]

The State did not call Sellars as a witness, and it has failed to meet the requirements for applying California v.

Green, *supra.* The inference to be drawn is that the State was apprehensive that Sellars would recant his confession or refuse to testify. The State evidently did not want to be in the position of introducing the confession by way of impeaching or rebutting Sellars' testimony. It preferred to introduce the confession in its case in chief and put the burden of rebuttal on the defense.

That Sellars was available to be called as a witness does not mitigate the prosecution's misconduct here. The State sought to shift to the defendant the risk of calling Sellars to the stand. To accept the State's argument that the availability of Sellars is the equivalent of putting him on the stand and subjecting him to cross-examination would severely alter the presumptions of innocence and the burdens of proof which protect the accused. Hoover's undoubted right to call Sellars as a witness in his behalf cannot be substituted for his Sixth Amendment right to confront Sellars as a witness against him.

We cannot hold that either of the constitutional errors was harmless within the criteria of Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705, and Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284. In fact the appellee makes no such contention in this Court.

The judgment of the district court is therefore reversed and the cause is remanded with directions to grant the writ of habeas corpus and discharge the pe-

5. It is conceivable that the prohibition against use of prior consistent statements may not rise to the level of a constitutional requirement in view of the rationale of *Green.* That issue was not presented in *Green,* nor is it directly presented in the facts of this case.

6. *Douglas* was recently cited with approval in Dutton v. Evans, 1970, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 [1970]. *Dutton* does not do damage to the holding here. *Dutton* held that state evidentiary rules may vary from the federal rules in that a statement by one conspirator may be used against another if the statement is made during the time the overt offense is past but during the time in which the conspirators are attempting to avoid being identified. In effect, the state and federal rules may differ on what constitutes the "pendency of the conspiracy." But even the most strained construction of the hearsay exception cannot bring a conspirator's confession under the penumbra of "in furtherance of" or "during the pendency of" the conspiracy.

titioner, unless the State elects to retry him within a reasonable time.

Reversed and remanded with directions.

### APPENDIX 1

### AFFIDAVIT

No. _____

IN JUSTICE'S COURT

Precinct No. 2

THE STATE OF TEXAS,   [SF 1003]
COUNTY OF HARRIS     App. 294

I, J. E. Hodges do solemnly swear that I have good reason to believe, and do believe, that on or about the 11th day of March, A.D. 1964, in the County of Harris, and State of Texas, one John Oscar Young, did fraudulently take from the possession of Mair Schepps, without his consent, with intent to deprive said Mair Schepps, of the value thereof, and to appropriate the same to his own use, and benefit, certain corporeal personal property owned by said Mair Schepps, to wit: 1—man's 5 carat, blue white, diamond ring, of the value of $12,000.00 and that said property is now concealed by Sam Hoover in his home located at 500 South Tatar St., Pasadena, Texas situated in said county.

My belief as aforesaid is based on the following facts: Information from a reliable source that the above described property is now being concealed at the above address.

Wherefore I ask that a warrant to search for and seize said property be forthwith issued in accordance with the law in such cases provided.

(Signed) J. E. Hodges
Affiant

Sworn to and subscribed before me by J. E. Hodges on the 18th day of March, A.D. 1964.

(Signed) D. F. THOMPSON, JR.
Justice of the Peace,
Precinct No. 2,
Harris County, Texas

### APPENDIX 2

### WARRANT

App 295
[SF 1003]

The State of Texas to the Sheriff or Any Peace Officer of Harris County, in said State, Greeting:

Whereas, complaint in writing, under oath, has been made before me, by J. E. Hodges alleging that on or about the 11th day of March, A.D. 1964, in the County of Harris, and State of Texas, one John Oscar Young did fraudulently take from the possession of Mair Schepps, without his consent, with intent to deprive said Mair Schepps of the value thereof, and to appropriate the same to his own use, and benefit, certain corporeal personal property owned by said Mair Schepps, to wit:

1—Man's 5 carat, blue white, diamond ring, and that said property is now concealed by Sam Hoover in his home located at 500 South Tatar St., Pasadena, situated in said county:

You are therefore commanded to forthwith search the place above named and described, where said stolen property is alleged to be concealed, and if you find said property, or any portion thereof, you will seize the same, and bring it before me at Houston, Texas, in said County, on the 20th day of March, A.D. 1964; and you will also arrest and bring before me, at said place and time, the said Sam Hoover, accused of concealing of said property.

Herein fail not, and due return make hereof to me at the place and time above named.

Witness my signature on the 18th day of March, A.D. 1964.

(Signed) D. F. THOMPSON, JR.
Justice of the Peace
Precinct No. 2,
Harris County, Texas

**926**

## APPENDIX 3

File No. ──────────

### IN JUSTICE'S COURT
Precinct No. 1,
of Harris County.

### THE STATE OF TEXAS
### VS.
500 South Tatar St.
Pasadena, Texas

### SEARCH WARRANT

Issued the 18th day of March, A.D. 1964.
D. F. THOMPSON, JR., Justice of the Peace,
Precinct No. Two
Harris County, Texas

### OFFICER'S RETURN

App 296
[SF 1003]

Came to hand the 18th day of March A.D. 1964, at 3:00 o'clock A.M. and executed the 18th day of March, A.D. 1964, at 3:30 o'clock A.M. by Capt. L. C. Colley, J. E. Hodges, R. B. Schallert, C. M. Leonard, J. O. Parker, Lt. Joe Thorp, Calvin Atkins, A. Loesch, Sheriff's Office. Inspector Wornick, Pasadena Police Dept.

*Guns Recovered:*

One matched set of Derringers, .22 Cal. Chrome with white handles. Serial numbers 8060N and 8061N. (Colt) in book folder.

One .22 Caliber blue steel revolver, brown handles, Serial #74873. (Colt).

One .41 Cal. special Derringer, Serial #1314. Chrome with white handles. (Remington).

One 7.65 Cal. Automatic, Veta. Serial #128848. Chrome with white handles.

One .380 Cal. Automatic, Colt Serial #13259. Chrome with black handles.

One .32 Cal. Iver Johnson. Serial #9515. Chrome with black handles.

One .25 Cal. Automatic Galesi Brescia Brev. Model 9, Serial #161914.

Chrome with white handles.

*Diamonds Recovered:*

22 small white stones.
2 large white stones.
2 Green stones.
1 red stone
1 black stone
4 blue stones.
32 total stones.

(Signed) J. E. HODGES

(Signed) R. B. SCHALLERT